## JOHN GRIFFIN v. THE STATE.

### No. 1739. Decided March 15, 1899.

**1. Murder—Evidence.**

On a trial for murder, evidence is not admissible to prove, by the testimony of a physician, that the blow inflicted by defendant on the head of the deceased with a beer glass would not have caused death but for the inflamed condition of the brain of deceased, caused by the excessive use of alchoholic liquors. Where the blow was the proximate cause of the death, the enfeebled condition of deceased at the time would not be material.

**2. Same—Declarations of Defendant—Res Gestae.**

Where it appeared on a trial for murder that within five or ten minutes after defendant had struck the fatal blow with a beer glass, he, being much excited and frightened, stated to the first persons he mentioned the matter to after leaving the house and going some thirty feet, "I hope I haven't hurt him much. I did not think the glass was heavy enough to knock him down. I just wanted to keep him from kicking me any more." Held, the declarations were res gestae and admissible in evidence.

**3. Same.**

The fact that defendant, as a witness, testified to the facts stated in paragraph 2, supra, would not cure the error of the court in excluding the evidence when offered to be proved as res gestae.

**4. Improper Questions by Prosecution.**

On a trial for murder, while it was improper for the district attorney to ask questions suggesting that a relative of defendant had robbed deceased, shortly before the homicide, the court not having permitted the testimony, the simple asking such questions would not constitute reversible error.

**5. Murder—Charge as to Evil and Cruel Disposition.**

Where it appears that the homicide was the result of a sudden quarrel, that deceased struck defendant the first blow and kicked him out of the saloon, whereupon defendant threw a beer glass which struck deceased on the head, causing death; Held, the facts did not warrant a charge from the court as to a homicide committed with evil and cruel disposition.

**6. Same—Charge as to Weapon or Means Used.**

On the facts stated in paragraph 5, supra, the jury should have been pointedly instructed that if they believed the weapon used was not likely to produce death, they could not presume that the death was designed; and that before they could convict of any degree of culpable homicide they must believe from the manner in which the weapon was used that it was evidently intended by defendant to take the life of deceased.

APPEAL from the District Court of Victoria. Tried below before Hon. JAMES C. WILSON.

Appeal from a conviction for murder in the second degree; penalty, six years imprisonment in the penitentiary.

The indictment charged appellant with the murder of M. Hanboldt, on the 8th day of October, 1897, by striking him with a beer glass.

The facts attendant upon the homicide are sufficiently stated in the opinion.

No briefs for appellant have come to the hands of the Reporter.

*Robt. A. John,* Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was convicted of murder in the second degree, and his punishment assessed at confinement in the penitentiary for a term of six years, and he appeals.

The homicide occurred a few miles from the town of Victoria, at the saloon of Otto Fieks. It does not appear that there was any former grudge between the parties, and the meeting at this saloon was casual. A few weeks before the difficulty, deceased, Mauritz Hanboldt, lost his hat, and appellant found it. When they met in the saloon of Fieks, appellant asked deceased to give him a beer for finding his hat. Deceased informed him that he had already given a beer for that, and declined to give him another. The State's witnesses show that appellant immediately became boisterous, and used profane and abusive language. Defendant's witnesses, however, deny this. All agree that he immediately returned from the table where deceased was sitting, with another person, to the bar counter of the saloon, to drink a glass of beer. Deceased got up, and told appellant "to come here; he wanted to tell him something." Appellant came to him, and deceased took hold of him, and led him towards the door of the saloon, and appellant asked him what he wanted. He told him he wanted to show him something. Appellant appears to have pulled himself loose from deceased. Deceased, who was some stouter and heavier than appellant, then appears to have gotten in behind appellant; and according to appellant's witnesses, shoved and kicked him out of the saloon door, appellant having his glass of beer in his hand. Some of the State's witnesses say that they did not see this. Deceased's wife, who was on the outside, and a few yards from the saloon, sitting in a buggy, waiting for her husband, states that after appellant got out of the saloon she saw him pour the beer out of his glass, and then turned, and threw it. Other witnesses testify that the beer was not poured out of the glass, but the glass was thrown with the beer in it. It struck deceased in the head, a little above the left ear, and he fell on the saloon floor. In a short time he struggled to his feet, ran out of the saloon into a little field near by, was caught by his friends, and brought back, and placed in the buggy, and carried to the house of Fieks, where he died, from the effects of the wound, about 12 or 1 o'clock that night. Appellant, after he struck deceased, returned to the saloon; and there is some controversy as to whether he attempted again to assault deceased, some of the witnesses testifying that he did, and others that he did not. He picked up some small weights that were near by, and went out of the saloon at another door, and in a short time went to a wagon near the saloon, and with other parties, left. He surrendered to the sheriff the next day. We would observe that the witnesses who describe the wound state that there was no blood or break of the outer skin; that the wound showed in the shape of a half circle, as if inflicted with the bottom of a beer glass. The skull was not exposed, but from a superficial examination of the wound the physicians testified that the skull was fractured, and that the blow caused the death of deceased.

Appellant proposed to prove that deceased was addicted to the exces-

sive use of alcoholic liquors, and was beastly and helplessly drunk two days before the killing. He states that this evidence was offered for the purpose and as preliminary to the testimony of Dr. Rape, who attended the deceased at the time of his death; and that he proposed to prove by him that, but for the inflamed condition of the brain, the blow inflicted would not have caused the death of deceased. The court explains this by stating that Dr. Rape testified in the case, and did not testify as stated in the bill of exceptions. The testimony, as offered, was excluded. In this we see no error. Even if the testimony of Dr. Rape had been to the effect that, but for the diseased condition of the brain, death might not have resulted from the blow, still there would have been no error in rejecting said testimony. The blow was the proximate cause of the death of deceased, and the enfeebled condition of deceased at the time would not be material. There was no suggestion here of any gross negligence on the part of deceased after receiving the blow, or of his attendants.

Appellant offered to prove by Wes Brown and Matthew Wyatt, who were present at the homicide, that they were at the wagon in which defendant and themselves left the scene of the difficulty; that, immediately upon defendant leaving the house where the blow was struck, he came to the wagon, and said to them: "I hope I haven't hurt him much. I did not think the glass was heavy enough to knock him down. I just wanted to keep him from kicking me any more." This was within five or six minutes after the blow had been struck, and while defendant was still very much excited and frightened from the difficulty, and while the people in the house were surrounding deceased. The State objected to this, because it was not res gestae, but merely self-serving. The court, in his explanation to this bill, in refusing to admit the testimony, states that the declaration of defendant was made five or ten minutes after the difficulty, and after defendant had walked from the house to the wagon in the road, and after the wagon had been driven thirty or forty yards. Defendant and Wes Brown got into the wagon with the witness Matthew Wyatt, and that it was ten or fifteen minutes after the difficulty when defendant made said statement. Appellant further proposed to prove by himself the same expressions in regard to the difficulty as above set out, and that he was at the time very much excited and frightened from the difficulty, and that the wagon was not more than thirty feet from the house; and these were the first people he had mentioned the matter to; that this was about five minutes, or less, after the blow had been struck. This was objected to on the same ground, and the court appended to this bill no explanation. We are inclined to the view that this testimony was res gestae, and was admissible as such. In point of time it was very close to the difficulty. Appellant does not appear to have been engaged in any other matter, nor to have indulged in any conversation about any other subject. Almost immediately after the fatal blow was struck by him, and while he was still excited, before he left the place, he made the statement which was excluded. It does not occur

to us that there was time for fabrication, nor is there any circumstance indicating that the statement was not the spontaneous expression of the witness (defendant), springing out of the transaction.  Smith v. State, 21 Texas Crim. App., 277; Fulcher v. State, 28 Texas Crim. App., 465; Chalk v. State, 35 Texas Crim. Rep., 116; Underh. Crim. Ev., sec. 95 et seq.  True, appellant, in his testimony, stated these facts, but his evidence on this point was not given in as res gestae, but the mere statement of the fact, long after the homicide, after time for deliberation; and, of course, such testimony would not have the same force and effect with the jury as if it were a part and parcel of the transaction, springing out of it at the time.  It appears a small matter that he was deprived of this testimony, yet it was a right to which he was entitled; and we can not tell what effect its admission may have had with the jury.

Appellant, by his bill of exceptions number 5, questions the action of the court permitting the district attorney to ask certain questions, suggesting that one Frank Jones had robbed deceased a short while before the homicide, and that said Jones was a cousin of defendant.  This testimony was not admitted by the court, but the complaint is that the asking of the question, under the circumstances, was calculated to injuriously affect the defendant with the jury.  We believe that the testimony was clearly inadmissible, and that the questions calculated to elicit it were obviously improper, and should not have been asked.  While this is true, we would not be willing to reverse the judgment alone on this ground.

Appellant excepted to the action of the court in giving the following charge: "Where the circumstances attending the homicide show evil or cruel disposition, or that it was the design of the person offending to kill, he is deemed guilty of murder or manslaughter, according to the other facts of the case, though the instrument or means used may not, in their nature, be such as to produce death ordinarily."  This was objected to, and the charge was also objected to because the court erred in not charging the jury fully on the question of his intent to kill deceased.  We do not see, in this case, any evidence that the homicide was inflicted in a cruel manner, or under circumstances showing an evil or cruel disposition.  It was a sudden quarrel, in which it appears that deceased struck the first blow.  He shoved and kicked defendant out of the saloon.  The defendant immediately turned, and threw a beer glass, which he had in his hand, at the deceased, striking him on the head, inflicting a wound from which he died.  This was what occurred, and we fail to see in the testimony any evidence indicating an evil or cruel disposition, unless any killing which may occur in a casual difficulty indicates such cruel or evil disposition.  We do not believe the court should have charged on this subject.  The real keynote in this case was appellant's intention to kill.  The court gave in charge to the jury article 717, Penal Code, on this subject, but we believe the learned judge should have proceeded further than merely to give the statute in the abstract form, and should have applied the law embodied in such statute to the facts of

this case, and instructed the jury pointedly that, if they believed the weapon used was not likely to produce death, the jury could not presume that death was designed; and that, before they could convict appellant of either murder or manslaughter, they must believe from the manner in which said weapon was used, it was evidently intended by appellant to take the life of deceased. Shaw v. State, 34 Texas Crim. Rep., 435; Honeywell v. State, ante, p. 199. We furthermore believe that the court's charge on manslaughter should have been directly addressed to the facts proved. The statute makes an assault inflicting pain or bloodshed adequate cause. The evidence here showed that deceased did assault appellant by shoving and kicking him out of the saloon. The court charged generally that anything which was adequate cause to produce anger, etc., was adequate cause; but the salient fact in this case suggesting adequate cause was the assault of deceased on appellant, and the court should have predicated a charge of manslaughter on the facts proved on this subject. For the errors discussed, the judgment is reversed, and the cause remanded.

*Reversed and remanded.*

DAVIDSON, Presiding Judge, absent.