### BILL POSEY v. THE STATE.

#### No. 2909.   Decided February 10, 1904.

**1.—Charge of the Court—Manslaughter—Deadly Weapon.**

Where the evidence disclosed a sudden quarrel, in which appellant struck deceased with a sealing-weight, or piece of iron, weighing from three to six pounds, fracturing his skull and causing his death, it was error to submit this phase of the case on the theory that a sealing-weight is a deadly weapon, and this error is not cured in a subsequent charge instructing the jury that if they believe said sealing-weight was not in its nature calculated to produce death and was not used with intent to kill, to convict of aggravated assault.

**3.—Same—Manner of Use and Intent to Kill.**

Where the evidence disclosed a sudden quarrel in which the instrument used was not per se a deadly weapon, the jury should have been distinctly instructed that, if they believed the instrument used in the homicide was one not likely to produce death, in that event before they could find appellant guilty of any grade of feloneous homicide they must find from the manner of said use of said instrument that it was the evident intention of appellant to take the life of the deceased.

**3.—Same—Contradictory Instructions.**

It was error to charge if the jury believed that defendant voluntarily and unlawfully engaged in a combat with deceased, without any intention of killing or inflicting serious bodily injury upon him, he would not be guilty of any higher grade of offense than manslaughter; and such error was not cured by a subsequent charge that if the sealing-weight was not

a deadly weapon, and defendant did not intend to kill deceased, he would be guilty of an aggravated assault.

**4.—Same—Negligent Homicide.**

Where the evidence showed a sudden quarrel in which defendant killed deceased with a piece of iron after he was challenged by deceased to fight, who according to some of the testimony asked for a knife, there is nothing in the case authorizing a charge on negligent homicide.

Appeal from the District Court of Hunt. Tried below before Hon. H. C. Connor.

Appeal from a conviction of manslaughter; penalty, two years imprisonment in the penitentiary.

The opinion sufficiently states the case.

*Bennett & Jones,* for appellant.—It is error for the court to instruct the jury that the defendant would be guilty of any degree of felonious homicide without any intention of killing or inflicting serious bodily harm on the deceased, and especially is it so where the issue and the defendant's main defense is the absence of intent to kill.

If a homicide occur as the result of the use of a deadly weapon, as well as one not in its nature calculated to produce death, under circumstances not amounting to or evidencing an intention to kill, the accused would not be guilty of any degree of culpable homicide, but, self-defense aside, of aggravated assault and battery. Boyd v. State, 28 Texas Crim. App., 137; Shaw v. State, 34 Texas Crim. Rep., 435; Honeywell v. State, 40 Texas Crim. Rep., 199; Griffin v. State, 40 Texas Crim. Rep., 312; Fitch v. State, 36 S. W. Rep., 584; Lax v. State, 65 S. W. Rep., 88; Danforth v. State, 69 S. W. Rep., 159, 5 Texas Ct. Rep., 455.

*Howard Martin,* Assistant Attorney-General, for the State.—Henry v. State, 38 Texas Crim. Rep., 306; Taylor v. State, 51 S. W. Rep., 1106; Danforth v. State, 69 S. W. Rep., 159; Shaw v. State, 34 Texas Crim. Rep., 435; Griffin v. State, 40 Texas Crim. Rep., 312; Honeywell v. State, 40 Crim. Rep., 199.

HENDERSON, JUDGE.—Appellant was convicted of manslaughter, and his punishment assessed at confinement in the penitentiary for a term of two years; hence this appeal.

It is not necessary to discuss any question in this case, except that which relates to the charge of the court, and the special requested charges which were refused. It appears that the hoimcide occurred in a sudden quarrel between appellant and deceased. Both of the parties were railroad men. Deceased, Murray, was the conductor of a freight train, and had just brought his train in to the station. Appellant, who was sitting in the room in the station, asked deceased when he came in what engineer pulled him, and he replied, "That dam crazy Bob Posey." Appellant told him he ought not to talk that way about Bob Posey, that he was his brother. Deceased told him he would talk that way

about him.   Appellant replied if he did he would have him to whip. Deceased told him if he would come outside he would do it, and walked out of the room.   According to some of the witnesses, as he went out he inquired for a knife, in order to borrow it.   Appellant followed him out, and just as he went out to where deceased was in the dark, he grabbed what the witnesses term a sealing-weight, or piece of iron, shown by the testimony to weight from three to six pounds, and immediately after going out where deceased was, struck him one blow, which fractured his skull, and which in about a week caused his death.   Appellant contends that the weapon used was not a deadly weapon, and that appellant's defense was mainly based on article 717, Penal Code, and that the court failed to give an adequate charge where a homicide occurs and the weapon used is not of a deadly character.   In the charge of the court on murder in the first and second degrees and manslaughter, all of which were given by the court, the same are submitted to the jury on the idea that a sealing-iron was a deadly weapon; that is, the jury were instructed, if they believed defendant struck deceased with a piece of sealing-iron, and that the same was a deadly weapon, to find him guilty, etc.   Subsequently, however, the court did copy article 717 in the charge; and then instructed the jury if appellant, under the influence of sudden passion, struck Murray on the head with a piece of sealing-iron, which caused his death; and they believed said sealing-iron was not in its nature calculated to produce death, and that the defendant did not intend to kill Murray, then to find him guilty of aggravated assault and battery.   In our opinion, the jury should have been distinctly instructed that, if they believed the instrument used in the homicide was one not likely to produce death, in that event before they could find appellant guilty of any grade of felonious homicide, they were required to find that, from the manner of the use of said sealing-iron, it was the evident intention of appellant to take the life of deceased. Instead of this, in the charge on manslaughter the court told the jury, if they believed defendant voluntarily and unlawfully engaged in a combat with A. B. Murray, without any intention of killing or inflicting serious bodily injury upon A. B. Murray, he would not be guilty of any higher grade of offense than manslaughter; which was tantamount to telling them that under such circumstances he would be guilty of manslaughter.   Whereas the fact is, if appellant had no intention of killing or inflicting serious bodily injury upon Murray, he could not be convicted of manslaughter.   He must have such intention, and if the weapon is not of itself a deadly one, the jury must gather such intention of killing from the manner in which the weapon was used; and it must evidently appear to them, from such use of the weapon or instrument, the intention to kill evidently appeared.   The charge given, as quoted above, announcing an erroneous principle, was not cured by the court subsequently instructing the jury that if the sealing-iron was not a deadly

weapon, and that defendant did not intend to kill Murray but made an unlawful assault on him, he would be guilty of an aggravated assault. It has been held that where a homicide is committed with a weapon not necessarily of a deadly character, it is incumbent on the court to instruct the jury on this issue; and of course in such case, when an instruction is required, it should be a proper instruction and not contradictory in terms. See Shaw v. State, 34 Texas Crim. Rep., 435; Griffin v. State, 40 Texas Crim. Rep., 312; Honeywell v. State, 40 Texas Crim. Rep., 199; Fitch v. State, 36 S. W. Rep., 584. The court also gave an instruction on negligent homicide. We find nothing in the case authorizing an instruction on this subject.

For the errors discussed the judgment is reversed and the cause remanded.

*Reversed and remanded.*