### NOAH WILLIAMS v. THE STATE.

No. 2437.   Decided April 30, 1913.

**1.—Burglary—Insufficiency of the Evidence.**

Where, upon trial of burglary, the evidence failed to show a breaking of the alleged burglarized house, and the evidence as to the. possession of the alleged stolen property and the offense generally was entirely circumstantial, the conviction could not be sustained.

**2.—Same—Rule Stated—Breaking—Recent Possession.**

While the possession of property recently taken from a burglarized house, without sufficient explanation, will sustain a conviction, it is, nevertheless, necessary to prove a breaking of the alleged burglarized house in some manner violative of the statute.

Appeal from the District Court of Morris. Tried below before the Hon. P. A. Turner.

Appeal from a conviction of burglary; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*Rolston & Rolston* and *Nance & Ward,* for appellant.—On question of the insufficiency of the evidence: Burrell v. State, 50 Texas Crim. Rep., 386, 97 S. W. Rep., 706; Hicks v. State, 145 S. W. Rep., 938.

*C. E. Lane,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—Appellant was convicted of burglary, his punishment being assessed at two years confinement in the penitentiary.

The evidence discloses that Wood and another negro named Harris were using a certain house for the purpose of storing cotton which they were gathering. The house consisted of two rooms, a north and south room. Harris controlled one of the rooms and Wood the other. Harris kept his room locked; Wood did not use a lock on his. The evidence in regard to this room discloses that Wood had placed his cotton in it on Thursday and had closed the door and latched it. It was latched by using a nut on the inside of the door, which could be manipulated through a hole in the door from the outside of the room. It seems to be an undisputed fact, from all the evidence in regard to this door, that the nut would easily turn when shaken by the wind or from any cause, and when it did so the door, to use the expression of the witnesses, "would spring open." Wood's testimony goes to the effect also that he had been missing cotton, and to detect the thief he had sharpened his knife and cut some paper and scattered it around in his cotton

for the purpose evidently of ascertaining who got his cotton if it was taken. There is some intimation in the record, as we understand it, that this was a newspaper. There is some evidence that in some cotton appellant subsequently carried to the gin two or three pieces of paper were found. The witnesses indicate that it was a coarse paper probably without printing on it, and may have been torn instead of cut. This is not very satisfactorily shown. Wood left the house closed Thursday evening and did not return to it until Saturday morning. He testified he did not know whether the house was opened during his absence or not, but that it would come open if shaken by the wind or from any other cause. Harris testified that he and his wife were picking cotton near by and had a three-year-old child; that they were at the house Friday evening putting away some cotton, Harris himself going in the room controlled by him for the purpose of getting a sack in which to carry corn from his field for the purpose of feeding his hogs; that he got the sack and did carry the corn home for the indicated purpose; that this was late Friday evening. At that time the door of the Wood room was open. Wood testified when he was there Saturday morning the door was open. Appellant, as did his mother, testified that on Friday night appellant was at home the entire night; that appellant's little brother, one of his mother's youngest sons, was accustomed to having spasms, and on this particular night he had spasms through the night, and appellant stayed at home with his mother for the purpose of assisting her with this child. That when the spasm come on it was a little difficult to control and hold him. They both concur in the testimony, and there is no conflict that he was at home the entire night, in so far as their evidence indicates, and that he nor his mother lay down or slept during the night on account of the condition of the child. They also testified, and it seems to be an undisputed fact, that the father of the boy and husband of the mother of appellant was a negro Baptist preacher, and was away at the time in his ministration to his brethren at some point in his capacity as preacher. The next morning—Saturday—appellant hauled cotton to the gin. It is shown by one of the witnesses at the gin that he saw some paper in the cotton hauled by appellant, but we gather from the testimony it may not have been the same character of paper as that testified by Wood, but be that as it may, he saw one or two pieces of paper in the cotton that went through the suction pipe into the gin. It is also in evidence from the witness Flemming that appellant rented land from him for that year. Flemming testified in regard to this matter, and says: "I don't remember exactly what rent I got out of the cotton the defendant made on my place. He paid me the rent for it. He paid me $4 and something for it, for the remnant—about 300 or 400 pounds. He carried the remnant home from my place. The first bale he picked he put it in my crib, and I had to have my crib, and told him to bring a wagon up there, that he had a place to put it over there. He just brought the wagon and carried it over home. I am talking about the remnant of

cotton. I think he sold it down here somewhere at the gin. He had a bale and a remnant on my place," etc. Appellant denied going into Wood's house and getting any cotton out of it, in addition to proving that he was at home; and he further testifies that he made a bale and a remnant of cotton on Charley Flemming's place. He did not remember exactly how much there was in the remnant. He brought it down to Mr. Mose Williams' gin and sold it to him. He testifies to having also received pay for this particular cotton. He says he told Mr. Wyse the cotton was made on Charley Flemming's place, and he figured the rent and paid him the balance as a credit on his debt and mortgage. The amount of the cotton was $14.40 or $14.80, and then the rent was figured out at $4.10. The cotton that appellant sold, we gather from the testimony, he contends was the cotton mentioned in regard to the Flemming place, which is the cotton Wood-contends was stolen from him. Wood was impeached by showing contradictory statements; among other things, he is shown to have stated after he denied making the statement that appellant was wrongfully prosecuted, giving the name of the party who had gotten his cotton. This is a sufficient statement, we think, to dispose of the main question urged for reversal, towit: sufficiency of the evidence.

It has been held by this court that where a breaking has been shown in a burglary case, and the accused is shortly thereafter found in possession of the property taken from the burglarized house, without explanation or testimony explanatory of his possession of the property innocently, it is sufficient to justify the jury in a conviction for burglary. But under that line of decisions it is necessary to show there was a breaking of the alleged burglarized house in some manner violative of the statute. In this case there is no direct testimony that the house was broken. The inference to be deduced by the State, in order to show a breaking under the facts, can only be justified by reason of Wood's testimony that he closed the house on Thursday evening, and that it remained closed unless broken on Friday night. If this did not occur, the burglary is not shown, nor is it deducible from the facts otherwise. To meet this evidence the defendant shows by Harris that the house was open on Friday evening, and it was upon Saturday morning by the State's witness and alleged owner, Wood. He adduced evidence that the cotton he sold Saturday was raised on Flemming's place. This being a case of circumstantial evidence, presumption of innocence must be excluded; that is, the facts must exclude every other conclusion or hypothesis except that of the guilt of appellant; that is, that he broke the house Friday night and took the cotton. Appellant may have taken the cotton under the facts and yet not have committed burglary under the testimony of Harris and Wood. There is no real conflict between the fact that the house was closed Thursday night and Harris' testimony showing that it was open Friday evening, and Wood's testimony that it was open Saturday morning. Wood's testimony as to Thursday evening closing could be true, Harris' evidence true, and

Wood's testimony that it was open Saturday morning true, and yet the testimony has not excluded sufficiently the theory of innocence to justify the jury in saying that innocence is excluded and guilt alone made to appear. The theory of guilt is inference based on other inferences and not facts. Under the theory of circumstantial evidence we are of the opinion the State has not sufficiently made out a case to justify the incarceration of this negro boy in the penitentiary for burglary.

Without discussing other matters in the case the judgment is reversed and the cause is remanded.

*Reversed and remanded.*