### Dave Jordan v. The State.

#### No. 8020.   Decided March 5, 1924.

**1.—Burglary—Insufficiency of the Evidence—Recent Possession—Identification—Breaking.**

The mere possession of recently stolen property, although identified, without evidence of a breaking from the house or car from which it was taken is not sufficient to authorize a conviction for burglary, and where the property is not identified and the evidence also fails to show that the car which may have been burglarized was the same car in which the shipment of the property was made, the conviction cannot be sustained.

**2.—Same—Evidence—Other Offenses.**

Where, upon trial of burglary, there was no connecting evidence with the other reported burglaries testified to, such testimony was improper and should have been excluded and was reversible error although the court instructed the jury not to consider it.

Appeal from the District Court of Cass.   Tried below before the Honorable Hugh Carney.

Appeal from a conviction of burglary of a railroad car; penalty two years imprisonment in the penitentiary.

The opinion states the case.

*Bartlett & Patman,* for appellant.—On question of recently stolen property: Williams v. State, 156 S. W. Rep., 938; Hollis v. State, 153 id., 853; Johnson v. State, 60 id., 667; Watson v. State, 82 id., 514; Wayland v. State, 218 id., 1067.

*Tom Garrard* and *Grover C. Morris,* Assistants Attorney General, for the State.

HAWKINS, Judge.—Conviction is for burglary of a railroad car with punishment of two years confinement in the penitentiary.

Appellant raises a serious question as to the sufficiency of the evidence.   The offense is supposed to have occurred at Hughes Springs in Cass County, and to have consisted of breaking into a railroad car and taking therefrom two cases of lard, part of a shipment in

transit from Texarkana to Connor Brothers at Daingerfield. Connor Brothers had ordered from a wholesale grocery company at Texarkana fifteen cases of "Orange" brand lard. There is no evidence in this record showing the number of cases of lard nor kind which were started in transit from Texarkana. The first information we have of the matter from the record is from the witness Gilbert who checked the shipment from the Texas and Pacific Railroad at Jefferson to the M. K. & T. Railroad at that point. This witness personally made the check and says fifteen cases of lard went into M. K. & T. car number *90185*. The brand of lard so checked is not given by this witness. Gilbert sealed the doors of the car at Jefferson with seal numbers *369912* and 369922. This was done about March 20, 1922. The car in question seems to have contained local freight and was subject to be opened at any point on the line of road to which merchandise contained therein was destined. On March 23d a car was set out on the house track at Hughes Springs. This car is neither identified by number nor by tracing the seals as the car in which the shipment of lard was checked at Jefferson. The witness Pinson who checked out merchandise billed to Hughes Springs described this car as M. K. & T. car number *91805*. The seals on the doors when it reached Hughes Springs were numbers 3697021 and 3692022. Both doors of the car may have been legally and regularly opened and resealed between Jefferson and Hughes Springs and if this had been shown it would account for the change in the numbers of the seals, but would in no way account for the discrepancy in the number of the car. Pinson only disturbed one seal, which was 3692022 and after checking out the merchandise he resealed the door which he had opened with seal number 372147. This work was done by Pinson between nine and twelve o'clock on one day and the car remained at Hughes Springs until some time the next day when it was picked up and taken out on a train in charge of conductor Hooton. Hooton's testimony shows that he picked up M. K. & T. car number *91805* at Hughes Springs and at the time it was placed in his train the seals on the doors of the car were *97712* and *372147*, it thus appearing that since seal 97712 had been substituted for seal 3697021 the car had been resealed by Pinson. The evidence further shows that among the seals which had been apportioned to the station at Hughes Springs was included number 97712. This seal had never been used by any party authorized to use them. F. N. Moore, the railroad agent at Daingerfield, checked out of *a* car at that point *thirteen* cases of "Orange" brand lard billed to Connor Brothers, and from the "waybill" there appears to have been two cases missing. Moore does not give the name or number of the car, and therefore it is not identified in that manner as the car which contained the shipment when it left Jefferson as

the one which was "set out" at Hughes Springs. He only examined the seal on the door which was opened by him and he says this seal number was *371142*. It will be observed that this number does not correspond with either of the numbers on the car when picked up by Hooton at Hughes Springs. In other words, if a car was burglarized at Hughes Springs the evidence in the record fails to show that it was the same car in which the shipment of lard to Connor Brothers was checked at Jefferson. Without establishing the burglary of this particular car the state's case must fail, because it is on the shortage of the shipment of lard discovered at Daingerfield that the State bases its casee. Officers at Hughes Springs searched appellant's house on April 6th and in a loft over the dining room found six buckets of "Orange" brand lard. Entrance to this loft was had by crawling through a hole in the ceiling. These buckets had never been opened. If these six buckets of lard came out of the Connor Brothers Shipment it would account for one missing case but leaves the other missing case entirely unaccounted for. There was no attempt to identify this lard as being part of the Connor Brothers shipment save that it was the same brand of lard, and the general circumstances surrounding the transaction. Appellant introduced no evidence whatever, appearing to have relied on the State's failure to make out its case. The finding of the lard in appellant's house in an unusual place might justify the inference that his possession thereof was not consistent with innocence, but did it justify the conclusion that he was guilty of burglary? The mere possession of recently stolen property, although identified, without evidence of a breaking of the house or car from which it is taken is not sufficient to authorize a conviction for burglary. Strickland v. State, 78 S. W. Rep., 689; Williams v. State, 70 Texas Crim. Rep., 275, 156 S. W. Rep., 938. Where the property is not identified, and the evidence also fails to show that the car which may have been burglarized at Hughes Springs was the same car in which the shipment of lard to Connor Brothers left Jefferson it appears to present a failure on the part of the State to make out its case.

In the event of another trial there is another matter to which we advert. Over appellant's objection the State was permitted to prove by the witness Smith, special agent of the railroad company, that about the time and just before the arrest of appellant several box car burglaries were reported to him as having occurred at Hughes Springs, and that he, (Smith) was at that point investigating all of them at the time appellant was arrested. There is no evidence connecting appellant with these reported burglaries, and we find nothing which exempts proof thereof from the rule ordinarily excluding evidence of extraneous crimes. The error in admitting such proof becomes more serious from what immediately followed. Directly after Smith

had testified to the report of several burglaries having occurred at Hughes Springs the district attorney asked him in that connection the following question: "Since you made the investigation of the box car burglaries at Hughes Springs about the first of April, about the time the defendant was arrested, have there been any subsequent burglaries at Hughes Springs?"

Appellant objected to the question as soon as it was asked but before the court had time to sustain the objection the witness answered "No." The court realized that the evidence was objectionable and did all within his power to correct the matter by instructing the jury not to consider the question or answer. Taken in connection with the proof as to other burglaries we believe the court could not remedy the injury, which is apparent without argument. The answer was in response to a question which the district attorney ought not to have asked. The clear inference sought to be obtained was that numbers of burglaries having occurred at Hughes Springs and having ceased immediately upon the arrest of appellant, therefore, he must have been the perpetrator of the burglaries. It is not unlikely this inference was drawn by the jury from the evidence improperly before them. Its harmful character is apparent.

For the errors discussed the judgment must be reversed and the cause remanded.

*Reversed and remanded.*