## Andrew Runnels v. The State.

### No. 2294. Decided March 13, 1901.

**1. Murder—Confession.**

On a trial for murder, testimony was admissible which showed that, on the morning after the occurrence, which resulted in the death of deceased, the witness met defendant and asked him if he saw what the papers had to say about two unknown negroes assaulting a white man with a rock, and "told him that that was some of his and Cal's mischief;" to which defendant replied, "I struck one unknown lick, but I can get out of it by laying it on Cal." This testimony sufficiently identified the transaction of the night before, Cal Leach having also been identified as the person with him at the time; and it was properly admitted as in the nature of a confession by defendant.

**2. Same—Evidence—Deadly Weapon—Charge—Manslaughter.**

On a trial for murder, where it appeared from the evidence that defendant and deceased were strangers, that the difficulty was upon a sudden quarrel; and there was no proof of the size and weight or that the rock, the weapon used, was a deadly weapon, except from the effect of the one single lick which was not followed up by defendant. Held, in the absence of proof that the weapon was a deadly one, it was a question as to whether or not the defendant intended to take life, and was therefore error for the court, in its charge, to fail to submit the issue of manslaughter. Following Johnson v. State, ante, p. 377.

Appeal from the District Court of Tarrant. Tried below before Hon. W. D. Harris.

Appeal from a conviction of murder in the first degree; penalty, death.

The indictment charged appellant with the murder of Earl Pierce, on the 7th day of February, 1900, by striking him with a rock.

The evidence shows that deceased and one Johnnie Johnson had been drinking, and between 7 and 8 o'clock in the evening they started to go to the depot, where deceased intended to take the train for his home, which was in Dallas. They stopped in a vacant lot on the way, and one of them commenced singing, "All I Want Is My Black Baby Back." Defendant and Cal Leach and Henry Green, in company with some negro women, were coming down the street and heard the singing before they reached the place where deceased and Johnson were. When they got opposite the place where the singing was, defendant told the man who was singing "to go to hell," and the man replied in a very vulgar manner. Defendant and the other negroes proceeded on their way a short distance when defendant said to Cal Leach, "Let's go back and kill the G—d d—n sons of bitches," and he and Cal turned about and went back; and when they got near where the white men were singing, one of them threw a rock which struck Earl Pierce, the deceased, on the head, knocking him senseless. Defendant and Cal then turned and ran off. The lick from the rock was heard by Henry Green, and he also heard the man groaning and saw defendant and Cal running from the place. On the following day, Henry Green met defendant and asked him, "If he had seen what the paper stated about a white man being knocked in the head by two unknown negroes." Defendant said, "Yes." I said to him "You boys did that devilment." He laughed

and said: "I hit one unknown lick, but I can get out of it by laying it on Cal."

Earl Pierce was taken to the hospital. His skull was badly fractured. He lingered for a month without ever regaining consciousness and died from the effects of the blow he had received from the rock. There was no evidence as to the size or weight of the rock.

Defendant and deceased were strangers to each other.

The witness Henry Green's testimony, as to the confession or admission of defendant made to him as above stated, on the day after the occurrence, was objected to, because it did not sufficiently identify the parties or the transaction to which it referred.

*B. F. Bouldin* and *Carlock & Gillespie,* for appellant.

*D. E. Simmons,* Acting Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was convicted of murder in the first degree, and his punishment assessed at death.

Appellant excepted to the action of the court in admitting a conversation between Henry Green, witness for State, and defendant, the morning after the homicide. The statement, which is in the nature of a confession, is as follows: "I saw defendant early the next morning, but did not speak to him. I saw defendant about 11 a. m. down on Main Street. I asked him if he saw that business in the paper about a white man being struck by two unknown negroes the night before, and he said he did. I told defendant that that was some of his and Cal's mischief. He laughed and did not say anything at first, but in a minute remarked, 'I struck one unknown lick.' I said to him, 'Are you not afraid you will get into trouble?' He said he would lay it on Cal, and get out of it." The objection made by appellant was that the confession did not point to and identify the transaction of the night before. We can not agree to this. Appellant was identified as one of the parties who threw the rock which killed deceased. This occurred on the night before and Cal Leach was identified as the person with him at the time. There is other testimony in connection with this matter, and it occurs to us that the testimony was admissible.

Appellant complains of the action of the court in failing and refusing to charge the jury on the law of manslaughter. Under the circumstances of this case, the court should have given a charge on this subject. Defendant and deceased were strangers to each other. No former grudge existed between them. On the night in question deceased and a companion were sitting near a lumber pile; and appellant (a negro), accompanied by a negro woman, and one or two other parties with negro women, passed along near where the parties were sitting. Deceased and his companion (white men) were singing a song, "All I Want Is My Black Baby Back." Appellant appears to have considered that this song was intended for him and his companions, and to

have taken offense thereat, and told deceased and his companion "to go to hell." In reply, deceased used towards appellant a vile epithet, whereupon he and Leach turned back towards the parties. Defendant picked up a rock, saying, "Let's kill them," and threw at deceased and his companion. It struck deceased in the temple, breaking his skull, from which he died in about a month. We are not informed as to the size of the rock or its weight, nor do we know with any degree of definiteness how far appellant was from deceased when he threw the rock. It was in the nighttime, and, of course, it could not have been thrown with any great accuracy, though it appears to have struck deceased in a vital spot. Here we have no former grudge; a difficulty on a sudden quarrel; no proof that the weapon was deadly, except from the effect of the lick; no following up the blow on the part of appellant; no charge of the court with reference to the weapon; and, in the absence of proof that it was deadly, the jury must find, from the character of the assault, that appellant evidently had the intent to kill; and no charge on manslaughter was given. In Johnson v. State, ante, page 377, we held that in every case where it becomes a question (in the absence of evidence that the weapon with which the homicide was committed was deadly) whether or not appellant intended to take life, the court should give a charge on manslaughter; and we think the same principle is applicable to this case. In this case the jury found appellant guilty of murder in the first degree, and inflicted the death penalty. If they had been charged on manslaughter, and not confined alone to murder of the first and second degrees, they might have found differently. Under the circumstances of this case, because of the failure to charge on manslaughter, we can not permit the verdict to stand. The judgment is accordingly reversed, and the cause remanded.

*Reversed and remanded.*