## T. M. BETTS v. THE STATE.

### No. 591.   Decided December 2, 1910.

### Rehearing Denied January 4, 1911.

**1.—Murder—Indictment—Separate Offenses—Pleading.**

Where, upon trial of murder the indictment charged in the first count a capital felony and in the second an ordinary felony, each being a separate offense, the same was bad pleading; since, however, the case was submitted to the jury only on the first count in the indictment, and a verdict responsive thereto was returned, this in effect was an acquittal of the felony charge in the second count, and there was no reversible error.

**2.—Same—Evidence—Other Offense—Motive.**

Upon trial of murder there was no error in admitting the affidavit and information charging defendant with an aggravated assault upon the deceased, some time before the homicide.

**3.—Same—Evidence—Expert Opinion.**

Upon trial of murder there was no error in admitting in evidence the testimony of a physician who examined the dead body of the deceased and gave his opinion that the deceased could have been killed with a hair brush exhibited to witness. Following Waite v. State, 13 Texas Crim. App., 169, and other cases.

**4.—Same—Expert Opinion—Evidence.**

Upon trial of murder there was no error in permitting a physician to testify that in his opinion the whipping shown to have been inflicted by defendant on deceased, shortly prior to her death, would have the effect to weaken the vitality and lower the resisting powers of deceased.

**5.—Same—Evidence—Means Used.**

Upon trial of murder it was permissible for the State to show the character, weight, length and size of the waist belt which defendant had used in whipping deceased shortly prior to the homicide.

**6.—Same—Evidence—Instrument Used.**

Where, upon trial of murder, the case was one of circumstantial evidence, and it was the theory of the State that defendant killed deceased with a hair brush, there was no error to admit testimony that the hair brush was found in the house in a broken condition.

**7.—Same—Charge of Court—Cruel Manner—Instrument Used.**

Where, upon trial of murder, the theory of the State was that the defendant killed deceased by striking her with a hair brush or by beating and striking her with his hand, the court should have affirmatively charged the jury that if they believed that the instruments or means used by the defendant in killing deceased were not likely to produce death, and the injury was not inflicted

in a cruel manner that the defendant would not be amenable for the homicide unless he intended to kill deceased.

**8.—Same—Charge of Court—Manslaughter—Cruel Manner.**

Where, upon trial of murder, the theory of the State was that the defendant killed the deceased by striking her with a hair brush or by beating and striking her with his hand, the jury should have been charged that if the injury was inflicted in a cruel manner though with an instrument not likely under ordinary circumstances to produce death, and that there was no intent to kill, defendant would be guilty of manslaughter.

**9.—Same—Charge of Court—Adult Male—Child—Aggravated Assault.**

Where, upon trial of murder, the theory of the State was that the defendant killed the deceased by striking her with a hair brush or by beating and striking her with his hand, the court should have affirmatively charged the jury that if they believed from the evidence that the defendant did inflict injury upon the deceased which caused her death, but not in a cruel manner and with no intent to take the life of the deceased that he would be guilty of an aggravated assault; the evidence showing that defendant was an adult male and deceased a child, and there was reversible error.

Appeal from the District Court of Erath.   Tried below before the Hon. W. J. Oxford.

Appeal from a conviction of murder in the second degree; penalty, thirty-five years imprisonment in the penitentiary.

The opinion states the case.

*Watson & Simmang* and *Chandler & Pannill* and *Martin & George*, for appellant.—On question of indictment being bad in alleging two separate offenses:   Parks v. State, 29 Texas Crim. App., 597; McKenzie v. State, 32 Texas Crim. Rep., 568; Blackwell v. State, 51 Texas Crim. Rep., 24, 100 S. W. Rep., 775.

On question of expert opinion and instrument used:   Thompson v. State, 30 Texas Crim. App., 325; Cooper v. State, 23 Texas, 331; Hill v. State, 11 Texas Crim. App., 456; Betts v. State, 58 Texas Crim. Rep., 389, 124 S. W. Rep., 424.

On question of court's charge:   Hill v. State, 11 Texas Crim. App., 456, supra; Nichols v. State, 24 Texas Crim. App., 317.

On the question of the insufficiency of the evidence:   Lovelady v. State, 14 Texas Crim. App., 545.

*John A. Mobley*, Assistant Attorney-General, for the State.—On the question of expert opinion:   Wright v. State, 36 Texas Crim. Rep., 35; Angley v. State, 35 Texas Crim. Rep., 427; Payton v. State, 35 Texas Crim. Rep., 508.

On question of court's charge:   Whitaker v. State, 12 Texas Crim. App., 436; Wright v. State, 10 Texas Crim. App., 476; Cook v. State, 22 Texas Crim. App., 511; Bell v. State, 17 Texas Crim. App., 538.

LANE, Special Judge.—Appellant was tried in the court below on an indictment which charged him and Eva Betts, his wife, with

the murder of Rozella Betts, their female child, about two years old. He was convicted of murder in the second degree, and his punishment assessed at thirty-five years confinement in the penitentiary.

1. This is the second appeal. The first appeal is reported in 57 Texas Crim. Rep., 389.

2. The evidence briefly stated shows that beginning about the first day of November, 1908, up to about two weeks before the death of deceased, which occurred on the 9th day of December, 1908, appellant with a waist belt and with his hands cruelly whipped the deceased. The evidence shows that these whippings did not cause the death of deceased, but had a tendency to lessen its vitality and resisting powers. One theory of the State was that the appellant by the use of a hair brush or his hands beat the deceased in such a manner that it caused the bursting of blood vessels on the brain, which formed a blood clot and this causing the death of the deceased. Another theory was that by said means he inflicted said injuries in a cruel manner. Dr. Day, one of the physicians who made the post-mortem examination, testified that in his opinion the deceased died of strangulation; that there were some few blood clots upon the brain caused evidently by the bursting or breaking of some of the blood vessels of the brain; that in his opinion the death of the child was not the result of the blood clots. These brain clots were not very large, some the size of a pea and some may be a little larger. That he would not undertake to say that the clots resulted from the jarring of the brain as the result of the chiseling the skull, nor that the blood of the brain was sufficiently coagulated at the time to prevent a hemorrhage by reason of the chiseling. The evidence shows that there were two postmortem examinations on the body of the deceased, one in the morning—an external one—and one in the evening about two o'clock of the day of the death of deceased. That at the last examination the doctors removed the scalp from the child's head and found some ten or twelve bruises or contusions on the skull. That after this they removed the skull of the deceased by means of a chisel and mallet. Appellant proved by several witnesses that his general reputation for peace and quiet was good, and that he was kind and affectionate to the child. This is not all of the testimony, but we think is sufficient to present the questions herein discussed. It was the theory of the State that appellant killed the child either with his hands or with a hair brush about two and a half inches wide, and eight or nine inches long, and weighing about three and one-fourth ounces. The case against appellant is one of circumstantial evidence. No one saw the killing.

3. We are of opinion that the indictment is a good one for the reasons stated on first appeal. Betts v. State, 57 Texas Crim. Rep., 389.

4. Bill of exceptions No. 2. The State was permitted over appellant's objection to introduce in evidence an affidavit and information

charging appellant with committing an aggravated assault upon Eva Betts (the judge certifying that the evidence showed that Eva Betts and Rozella Betts was one and the same person) on the 10th day of November, 1908, and also so much of the judgment of the court as showed the trial of the cause and defendant's plea of guilty therein. There was no error in this. Waters v. State, 54 Texas Crim. Rep., 322, 114 S. W. Rep., 628.

5. Bill of exceptions No. 4. Shortly after the death of deceased Dr. Gordon examined the dead body of the deceased and testified minutely and in detail as to the condition of the head and body of deceased, including the contusions that appeared on the head of deceased. After so testifying the State exhibited to the witness the said hair brush, and which was shown to be the one found by the sheriff at the house where deceased died and shortly after her death, and over the objections of appellant he was permitted to testify that in his opinion deceased could have been killed with said hair brush, and that in his opinion the bruises which witness found on the head of deceased could have been inflicted with said hair brush. In this there was no error. Medical experts are permitted to give their opinions that certain instruments are such as would produce death as well as certain wounds were inflicted by certain instruments. Waite v. State, 13 Texas Crim. App., 169; Banks v. State, 13 Texas Crim. App., 182; Kirk v. State, 37 S. W. Rep., 440.

6. Bill of exceptions No. 5. There was no error in permitting Dr. Gordon to testify that in his opinion the whipping shown to have been inflicted by appellant on deceased, shortly prior to her death, would have the effect to weaken the vitality and lower the resisting powers of deceased, and thereby render deceased more liable to bursting of a blood vessel on the brain. See last authorities.

7. Bill of exceptions No. 6. Sheriff Cox was permitted to testify as to the character, weight, length and size of a waist belt exhibited in evidence by the State. The evidence shows that this belt is the one used by appellant in whipping deceased shortly prior to the homicide. We think it was permissible for the State to show the character, weight, length and size of said waist belt.

8. Bill of exceptions No. 7. Sheriff Cox testified for the State that he went to the house where deceased was a few minutes after her death, and that he found the said hair brush exhibited in evidence in the room in a broken condition, and part on the washstand and the other part on the floor; that it appeared to be freshly broken. It is of wood with a metal rim around the edge, about two and one-half inches wide, length eight or nine inches, and weighed three and one-fourth ounces. After this testimony the State introduced in evidence said hair brush. In this there was no error. The case was one of circumstantial evidence, and it was the theory of the State that appellant killed deceased with said hair brush.

9. As the court failed to instruct the jury pertinently and affirma-

tively on aggravated assault arising out of the alleged assault which caused the death of deceased, to which failure appellant excepted in his motion for new trial, and as we believe there was an error of omission in such failure of the court to so charge the jury, we will notice in the following portions of the opinion some of the questions which are likely to arise upon another trial.

10. Article 717 of the Penal Code prescribes: "The instrument or means by which a homicide is committed are to be taken into consideration in judging of the intent of the party offending. If the instrument be one not likely to produce death, it is not to be presumed that death was designed unless from the manner in which it was used such intention evidently appears." The court charged the jury that if they believed that appellant did unlawfully with implied malice aforethought kill Rozella Betts by then and there striking the said Rozella Betts with a brush or by then and there striking, beating and bruising the said Rozella Betts with his hands, or by either of said means, then to find the defendant guilty of murder in the second degree, etc. The court then gave in charge to the jury article 717 of the Penal Code, and then instructed the jury that if they believed from the evidence beyond a reasonable doubt that the defendant killed the deceased by striking her with a brush or by beating and striking her with his hands, or by either of said means, then they were instructed that if such instruments were not such as were likely to produce death it is not to be presumed that the defendant designed the death of the deceased. We believe that the court in charging on this branch of the case should have charged the jury affirmatively that if they believed that the instruments or means used by appellant in killing deceased were not likely to produce death, and the injury was not inflicted in a cruel manner, that appellant would not be amenable for the homicide unless he intended to kill deceased. Hill v. State, 11 Texas Crim. App., 456.

11. The court charged the jury that if they believed from the evidence beyond a reasonable doubt that the defendant with implied malice aforethought inflicted injury on the deceased in a cruel manner with a brush or with his hand or with either of them, and if said instrument or means or either of them were not likely under ordinary circumstances to produce death, but the jury further believed that death did result therefrom, then the defendant would be guilty of murder in the second degree. We believe that the court, having charged on murder in the second degree, should have charged on manslaughter. Article 718 of the Penal Code prescribes that: "If any injury be inflicted in a cruel manner though with an instrument not likely under ordinary circumstances to produce death, the killing will be manslaughter or murder according to the facts of the case." Now, if appellant is guilty of murder under the facts, on this phase of the case, it is on account of the fact that with his hands or with the said hair brush he inflicted injury in a cruel manner upon the

deceased. If appellant inflicted the injury with his hands or with said brush in a cruel manner, although it was not likely under ordinary circumstances to produce death, the killing might not be murder. It might be manslaughter under the statute cited. If the injury was inflicted in a cruel manner and for the purpose of killing, of course, it would be murder, but if not for the purpose of killing it might be manslaughter. Taylor v. State, 41 Texas Crim. Rep., 148. So we think the jury should have been told that if the injury was inflicted in a cruel manner though with an instrument not likely under ordinary circumstances to produce death, but there was no intention to kill, that appellant would be guilty of manslaughter.

12. The court charged the jury that if they believed that appellant on or about the 9th day of December, 1908, was an adult male and that Rozella Betts was then and there a child, and that appellant did then and there strike, beat and bruise the said Rozella Betts unlawfully . . . to find him guilty of an aggravated assault. Appellant in his motion for new trial excepted to this portion of the charge because it did not specifically limit the jury's consideration to the particular assault, if any, that may have resulted in the death of the deceased, and had the charge been so formulated as to specifically call the jury's attention to the assault resulting in death, the jury might have found appellant guilty of an aggravated assault. If appellant killed the deceased with no intent to take life, and not in a cruel manner, then under the above authorities he would not have been guilty of the homicide, but would have been guilty of aggravated assault, he being a male and deceased being a child. So we believe that the court should have charged the jury affirmatively that if they believed from the evidence that the defendant did inflict injury upon the deceased which caused her death, but not in a cruel manner and with no intent to take the life of the deceased, that he would be guilty of an aggravated assault, he being an adult male and deceased being a child, and for this failure in the court's charge we think it is error for which the cause should be reversed.

The judgment is reversed and the cause is remanded.

*Reversed and remanded.*

McCord, Judge, not sitting.

RAMSEY, JUDGE.—I concur in the result. I think that the issue stated in paragraph 10 of the opinion should have been submitted as therein stated. While this issue was, in a manner, submitted by the court I doubt, if applied to the peculiar facts of the case, whether it was done in such a direct and particular manner as to clearly advise the jury of the exact issue to be decided by them. The other matters I do not care to discuss. I should not, however, have been disposed to have written upon some of them in the manner appearing in the opinion.

## ON REHEARING.

### January 4, 1911.

LANE, SPECIAL JUDGE.—On a former day of this term this cause was reversed and remanded and appellant has filed a motion for rehearing urging that this court was in error in holding that the indictment was a good one. The indictment in the first count charges Eva Betts and appellant with the murder of Rozella Betts, alleged to have been committed on the 9th day of December, 1908, and in the second count it charges that on the 15th day of November, 1908, the said Eva Betts and appellant did conspire together to kill the said Rozella Betts. It will be seen that the indictment charges two separate and distinct offenses. In the first it charges a capital felony, and in the second it charges an ordinary felony. Appellant before the trial presented to the court a motion to quash the indictment on the ground that the same charges two separate and distinct felonies alleged to have been committed on two separate and different dates. The court overruled this motion, and appellant excepted, but the court submitted only the first count to the jury. In our former opinion we thought that as the court had submitted the case to the jury only on the first count, that this was tantamount to an election by the State, and, therefore, tantamount to sustaining the motion to quash as to the second count. In this we believe we were in error. We believe that the court should have either quashed the indictment or compelled the State to elect one which it would proceed. We think the State in answer to the motion to quash had the right to elect on which count it would proceed. In the case of Faulkner v. State, 15 Texas Crim. App., 115, this court said:

"We will not discuss at this time just what offenses can be charged by different counts in the same bill. The following can not only be charged in the same indictment, but the *State can not be forced to elect upon which count defendant shall be tried.*

"In an indictment for the theft of a certain piece of property, counts for swindling, embezzlement, receiving, and, if an animal, altering mark or brand, branding horse, mule, ass, cattle, etc., without consent and with intent to defraud. Under an indictment for burglary, a count for the intended offense may be inserted, unless murder or rape be the intended felony, and one or the other of these offenses be actually committed. In this state of case, we advise that the party be indicted for the murder or the rape, omitting all mention of the burglary. In forgery, counts for uttering or attempting to utter and pass the forged document, may be inserted.

"This short enumeration is not to be understood as embracing all of the offenses which may be charged by different counts in the same indictment; but that which we wish to call special attention to is, that the State can not be compelled to elect upon which count the defendant shall be tried in the cases above enumerated. The prin-

ciple is that the court should always interpose, either by quashing the indictment or by compelling an election, where an attempt is made, as manifested by either the indictment or the evidence, to convict the accused of two or more offenses growing out of distinct and separate transactions; but should never interpose in either mode, where the joinder is simply designated and calculated to adapt the pleadings to the different aspects in which the evidence on the trial may present a single transaction."

Since, however, the case was submitted to the jury only on the first count in the indictment, which charged appellant with the offense of murder, and a verdict responsive thereto was returned, this, in effect, was an acquittal of the charge of conspiracy. So that, at this time, the only offense for which appellant can be tried under this indictment is for the offense of murder. That count in the indictment charges an offense, and for that only he can now be tried.

In the attitude of the case as it now presents itself, we hold there was no hurtful error in overruling the motion to quash.

The motion for rehearing is overruled.

*Overruled.*