## T. M. BETTS v. THE STATE.

### No. 1507. Decided February 21, 1912.

**1.—Murder—Sufficiency of the Evidence.**

Where, upon trial of murder, the evidence was sufficient, although circumstantial, to sustain a conviction, there was no error.

**2.—Same—Evidence—Former Conduct of Defendant.**

Upon trial of murder, there was no error in admitting testimony as to the previous conduct of defendant toward deceased, and that he had plead guilty to an aggravated assault upon the child.

**3.—Same—Evidence—Confronting Witnesses.**

Where there was no proof that the witness whose testimony was reproduced on trial, was dead, beyond the jurisdiction of the court, insane, or kept away from court by the connivance of defendant, and that he had had an opportunity to cross-examine him, such testimony was inadmissible.

**4.—Same—Evidence—Conduct of Witness.**

Upon trial of murder testimony as to what witness did should not have been admitted; she could only testify as to what she saw and heard.

**5.—Same—Remarks by Judge.**

Upon trial of murder, in ruling on the admissibility of testimony, it was improper for the court to say that a person could tell anything as well by hearing as seeing it.

**6.—Same—Charge of Court—Limiting Testimony—Extraneous Crimes.**

Where, upon trial of murder, there was evidence that defendant was prosecuted and convicted for committing an aggravated assault on the child alleged to have been killed, to show motive, etc., the court should have limited the effect of this testimony to such purpose alone; especially, where the facts raised the issue of aggravated assault.

Appeal from the District Court of Erath.  Tried below before the Hon. W. J. Oxford.

Appeal from a conviction of murder in the second degree; penalty, twenty years imprisonment in the penitentiary.

The opinion states the case.

*Watson & Simmang* and *Chandler & Pannill* and *M. Martin* and *C. George,* for appellant.—On question of the court's failure to limit testimony as to motive:  Cases cited in opinion.

On the question of permitting testimony as to what witness did: Gutgesell v. State, 43 S. W. Rep., 1016.

On question of reproduction of testimony:  Cline v. State, 36 Texas Crim. Rep., 1099; Kemper v. State, 63 Texas Crim. Rep., 1, 138 S. W. Rep., 1925.

On question of insufficiency of evidence:  Lovelady v. State, 14 Texas Crim. App., 545; Robinson v. State, 16 id., 347; Pullen v. State, 28 id., 114; Lucus v. State, 19 id., 79; Kunde v. State, 22 id., 65; Johnson v. State, 29 id., 150; Gay v. State, 42 Texas Crim. Rep., 450.

*C. E. Lane,* Assistant Attorney-General, for the State.

HARPER, JUDGE.—This is the third appeal in this case, the decision of this court on the first appeal being found in 57 Texas Crim. Rep., 389, 124 S. W. Rep., 424, and on the second in the 60 Texas Crim. Rep., 631, 133 S. W. Rep., 251.  The facts are sufficiently stated in those opinions and we deem it useless to restate them here. On this trial appellant was adjudged guilty of murder in the second degree and his punishment assessed at twenty years confinement in the State penitentiary.  The contention that the facts are insufficient to support the verdict has been twice passed on by this court, and we do not deem it necessary to restate them to show that the facts support the verdict.  It is a case of circumstantial evidence, but when we take all the facts and circumstances, the evidence introduced on behalf of the State would sustain the contention of the State and authorize a finding by the jury that appellant killed his own child.

There are many grounds stated in the motion for new trial, a majority of which have been passed on by this court on the former appeals in this case.  Such as have been discussed on the former appeals and decided, we do not deem it necessary to again pass upon.  In those opinions it was specifically held that the testimony of Bland Marshall, his wife and other witnesses as to the previous conduct of appellant towards the deceased child was admissible as well as the fact that he had plead guilty to having committed an aggravated assault on the child was admissible.  Being of the opinion that the former ruling of this court was correct we do not deem it necessary

to discuss these bills at length. For additional authorities see Weathersby v. State, 29 Texas Crim. App., 278; Rucker v. State, 7 Texas Crim. App., 549; Powers v. State, 23 Texas Crim. App., 42; Langford v. State, 17 Texas Crim. App., 445; Cordova v. State, 6 Texas Crim. App., 207; Handline v. State, 6 Texas Crim. App., 347; Hart v. State, 15 Texas Crim. App., 202. However, in admitting the testimony of the witness Haywood Jones, all the record shows is: "The State here reproduced the testimony of Haywood Jones given on a former trial in this cause and read the same to the jury as follows:

"Some time in November, 1908, defendant with his wife and child came to my house and there had room and board for some time. The child was small and somewhere between seventeen and eighteen months of age, I suppose. They called the child Rosella and sometimes called her Eva.

"I have known the defendant to whip the child three or four times a week during the time they were at my house. I was working at the Compress during that time, and would leave home early and return late at night, about 7 o'clock in the mornings and about 6 o'clock at nights. I could hear the licks and hear the child scream, and I could hear him several times trying to make the child put its clothes on. I had occasion to examine the child on Sunday night and found its body full of stripes, and its shirt full of blood. I could not say how long these whippings would last, but their duration would vary—some longer than others.

"My house is a quarter of a mile or more from the courthouse. I remember one night I left the house to go to the oil mill. The defendant was whipping the child when I left. My wife came over to the mill, and we went from there to the postoffice and around the public square, and then on back home. Defendant was whipping the child when we got back to the house. I don't know how long we were gone from the house, but the distance to the compress or oil mill from my house is not quite a half mile, and the distance of the house from the public square is something like a quarter of a mile. I do not remember that we stopped anywhere on this walk. This was about a couple of weeks before the child died. The child died at my house, but I was not present at the time of its death. I had left home that morning between 6 and 7 o'clock that same morning. I had seen the child every day before that and did not notice any appearance of sickness about it, and heard no complaint or suggested from either its father or mother that it was sick. I did not see the child the night before, nor on the morning of its death.

"There was a plank partition between the room occupied by defendant and his wife and that occupied by myself and wife. I have known them a number of times when they would leave the house together to leave the child in the room with the door shut. On the morning of the child's death the defendant was at the house when I

left for the oil mill. I do not know what the defendant used to whip the child with. I could frequently hear the licks, but do not know what they were made with. I saw a couple of small quirts in his room, some foot and a half or two feet in length, but do not know whether he used them on the child or not." It will be seen that this testimony is very material to the State's case. It shows the presence of the defendant at the house on the morning of the death of the child, and shows a course of conduct of defendant toward it that would likely produce the death of a child of that age at almost any time. There is no proof in the record that this witness is dead, beyond the jurisdiction of the court or any other fact or circumstance that would authorize the State to introduce it instead of placing the witness on the stand. In the record the only admission made is, "Yes, we will admit that he testified on a former trial and that this is the record of his evidence on the former trial." Defendant, under our laws, is entitled to have a witness produced in court, and "be confronted with the witnesses against him," except in the instances where the witness is dead, is beyond the jurisdiction of the court, is insane, or is kept away from court by the connivance of a defendant. In either of these events, if at a former judicial hearing the defendant had an opportunity to cross-examine the witness it would be admissible; but before the evidence taken at a former trial or hearing is admissible, proof must be made that the defendant had the opportunity to cross-examine the witness, and that he is dead, or one of the other exceptions in fact exist. We are satisfied in our mind that the court would not have admitted this testimony, unless this proof had been made, over the objections made, yet the record does not disclose such to be a fact, and we are bound by the record as agreed on by counsel, and certified to by the court. In the condition of this record, it was error to admit this testimony.

Another matter we would mention is, that while the testimony of the witness Mittie Ford is admissible as to all of what she saw or heard, yet the witness should not have been permitted to testify: "One night in November, while staying at Bland Marshall's, the defendant whipped the deceased in such manner and to such an extent I covered up my head with a pillow to keep from hearing Betts whip the child any longer." As to what the witness herself did should not have been admitted. She should have only been permitted to testify as to what she saw and heard, and not "that she covered up her head with a pillow to keep from hearing Betts whip the child any longer." It but gives emphasis to the State's contention that the acts of defendant were cruel and beyond reason.

While the remark of the court complained of would probably not present reversible error, yet it was improper for the court to state, in ruling on the admissibility of testimony, "that a person could tell a thing as well by hearing a thing as seeing it." This is true, yet as all the witnesses in this case merely testify to what they heard in

testifying as to the character of whippings defendant gave the child, the remark is probably on the weight of the testimony in that it tells the jury that as much weight should be given to the testimony of the witnesses as if they had testified to seeing the whipping. At least, the remarks should not have been made.

The defendant complains in his motion that if the testimony as to defendant being prosecuted and convicted for committing an aggravated assault on the child is admissible as tending to show motive, intent, etc., that the court should have instructed the jury as to the purposes for which said testimony might be considered by them. In the case of Warren v. State, 22 Texas Crim. App., 383, this court held: "Where evidence of extraneous crime is admitted for the purpose of showing intent or motive in the commission of the act alleged against him, it is the duty of the trial court in charging the jury to explain the purpose for which it was admitted, and to limit its effect to this purpose alone. (Long v. State, 11 Texas Crim. App., 381; McCall v. State, 14 Texas Crim. App., 353; Kelley v. State, 18 Texas Crim. App., 262; Francis v. State, 7 Texas Crim. App., 501.) Inasmuch as the court in this case submits the issue of aggravated assault, along with manslaughter and murder in the second degree, the purpose for which this testimony was admitted ought to be stated in the charge. The other complaints of the charge of the court present no error, and as all other questions presented are decided in the opinions written on the former appeals in this case, it is unnecessary to discuss them.

For the errors above pointed out this case is reversed and the cause remanded.

*Reversed and remanded.*

Prendergast, Judge, absent.