CLIFF BOYD v. THE STATE.

No. 3689.  Decided November 3, 1915.

Rehearing denied December 1, 1915.

1.—Murder—Suspended Sentence—Manslaughter.

The statute in reference to suspended sentence does not apply to murder, it being excepted out of the provisions of that law, and where the court did not submit manslaughter, there was no error in failing to submit the suspended sentence law to the jury.

2.—Same—Evidence—General Reputation—Suspended Sentence.

Where, upon trial of murder, the State introduced evidence attacking the reputation of the defendant on the theory that he had filed a plea for suspended sentence, but the court did not submit this issue, and the defendant had introduced no evidence as to his general reputation, this was error.

3.—Same—Charge of Court—Negligent Homicide.

Where, upon trial of murder, the evidence raised the issue of negligent homicide, the court erred in his failure to submit the same to the jury.

4.—Same—Charge of Court—Deadly Weapon.

Where, upon trial of murder, the evidence did not show that the instrument used was necessarily a deadly weapon, the court should have submitted a charge on this issue under article 1147, Penal Code, as to the means and character of instrument used.

5.—Same—Charge of Court—Manslaughter—Intent to Kill.

Where, upon trial of murder, the theory of the State was that the defendant had the ulterior purpose of killing, while that of the defendant was that there was no such intent, but the evidence showed lying in wait, etc., there was no error in the court's failure to charge on manslaughter.  Davidson, Judge, dissenting.

6.—Same—Evidence—Dying Declarations—Interpreter—Predicate.

Where the testimony as to the dying declarations were interpreted from the Spanish into the English language to the witnesses, who testified thereto, and the said interpreter was not sworn, the same was not original testimony as to said dying declarations, as said witnesses did not understand what occurred between them and the alleged interpreter, and such testimony was not admissible; besides, it was questionable whether sufficient predicate had been laid.

7.—Same—Predicate—Dying Declarations—Rule Stated.

The State must show that the declarant was under the immediate apprehension of death, and it is not sufficient that he believed he was going to die, when the wounds were not necessarily fatal.  Following Edmondson, v. State, 41 Texas, 500, and other cases.

8.—Same—Rule Stated—Predicate.

A sufficient predicate is not shown where the only statement of the deceased indicating approaching death was a statement that he believed he was fatally shot.  Following Craven v. State, 49 Texas Crim. Rep., 78.

9.—Same—Rule Stated—Approaching Death—Predicate.

The predicate for a dying declaration is insufficient if the proof fails to establish the fact that declarant, at the time of making the declaration, was conscious of approaching death, and believed that there was no hope of recovery. Following Ledbetter v. State, 23 Texas Crim. App., 256, and other cases.

**10.—Same—Evidence Hearsay—Co-conspirators.**

Upon trial of murder the acts, conduct, words, and statements of co-conspirators, after the completion of the conspiracy, can not be used against the other parties to the transaction when they were not present, and did not hear it. Following Cox v. State, 8 Texas Crim. App., 254. Neither were the declarations of the officers, not made in defendant's presence, admissible.

Appeal from the District Court of Wood. Tried below before the Hon. W. R. Heath.

Appeal from a conviction of murder; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*W W. Campbell* and *M. D. Carlock,* for appellant.—On question of intent to kill and negligent homicide: Reddit v. State, 47 S. W. Rep., 995; Morton v State, 71 S. W. Rep., 281.

On question of court's failure to charge on manslaughter: Johnson v. State 42 Texas Crim. Rep., 377; Taylor v. State, 51 S. W. Rep., 1106; Branch's Crim. Law, sec. 504.

*C C McDonald,* Assistant Attorney General, for the State.—On question of general reputation and suspended sentence: Simonds v. State, 76 Texas Crim. Rep., 487.

DAVIDSON, JUDGE.—Appellant was convicted of murder, his punishmen being assessed at five years confinement in the penitentiary.

The State's theory of the case is practically made by the testimony of Gallagher. In substance, that witness testified that he, defendant, and Farris were sitting in a restaurant in Alba, Wood County, when the deceased came in. The deceased carried a bundle showing he had made purchases which were in the sack. There are lignite coal mines in that immediate vicinity and deceased was an employee of the mining company. The suggestion was made by one of the three that they waylay and frighten him by throwing rocks or in some other way, and Gallagher testified that one of them stated that they would brain him. This latter expression was supposed to mean that they would kill him. They further agreed among themselves that two of them would get in front of the Mexican and waylay him at some convenient point and chunk him. Gallagher was to follow behind and whistle so as to give the other two notice not to strike him and segregate and identify himself from the Mexican so there would be no mistake in the man they struck or chased. That in pursuance to this agreement he followed the Mexican. On reaching a certain point he whistled and the other two threw at the Mexican three times. The substance thrown at him struck him in the forehead and cracked the skull. The Mexican lived about ninety days and died. There were two operations performed on him and a piece of bone taken from the skull each time. There is evidence from Gallagher of an inferential nature tending to show the purpose was to kill. That was the State's theory of the case. Quite a number of contradictory statements were introduced against Gallagher

from almost immediately after the trouble or very shortly thereafter flatly contradictory of his testimony before the jury, which, if true, would show there was no purpose to kill. Gallagher turned State's evidence under a contract with the State, for which he received manslaughter with suspended sentence. This was done, as shown by the testimony of the county attorney, or at least some of the witnesses, because appellant filed a plea for suspended sentence. The case was dismissed against Gallagher with a view of his reindictment and a plea of guilty with suspended sentence.

The defendant's theory of the case shows that there was no purpose of killing the Mexican, but it was only to frighten him. After they started on the expedition he and Farris went by a pile of bricks and broke some of them, and it would seem that the evidence indicates that it was with one of these pieces of brick bat that the Mexican was struck. The Mexican had on his head what is termed a miner's lamp, which is intended to give light in moving about in the mines or in the dark. Anyway, the Mexican had on the light, and one of the missiles seems to have been thrown at this light and struck the Mexican just under or where it was. Appellant's testimony is further to the effect that he did not understand the Mexican was to be killed, but was to be frightened and scared. In other words, his testimony excludes the idea of a homicide with intent. Upon that general proposition the State's theory was that they had the ulterior purpose of killing, or by throwing the bricks at the Mexican might result in his death, while that for the defendant was directly opposite and there was no purpose or intent to kill. Appellant's testimony is further to the effect that he did not participate in the throwing of the rocks or bricks, but after they started a friend of his by the name of Watson came along where he and Farris were and proposed they go to a picture show, and that he left and went to the picture show with Watson, and that the trouble all arose with the Mexican while he was absent at the picture show, and he had no connection with the immediate difficulty.

The defendant filed a plea for suspended sentence. This was not submitted to the jury because the court declined to submit the issue of manslaughter. The statute in reference to suspended sentence does not apply to murder, it being excepted out of the provisions of that law. Inasmuch as the court did not submit manslaughter but submitted murder, there was no error in this ruling.

This brings up another question as shown by a bill of exceptions, to-wit: that as original testimony the State introduced evidence attacking the reputation of appellant over his objection. This was admitted on the theory that he had filed a plea for suspended sentence. Inasmuch as the court declined to submit the issue of manslaughter, it was error to permit the State to attack appellant's good reputation. He had not introduced any such evidence and had not placed his reputation before the jury. Had the court submitted the issue of suspended sentence, under the decisions of this court this would not have been error. It is only when the suspended sentence law is an issue in the case that the

State is permitted to introduce the bad standing of the defendant as original testimony or before defendant places his reputation before the jury by facts or testimony.

The court's charge is attacked because it failed to submit the issue of negligent homicide in the second degree. For cases cited and collated, see Mr. Branch's Crim. Law, section 500. A charge on negligent homicide should have been given. The court submitted the State's theory of murder, and also gave a charge on aggravated assault in a general way. If appellant, Farris and Gallagher agreed to assault the deceased with pieces of brick bat with no purpose to kill but only to frighten, and the wound inflicted produced death without intention to kill, negligent homicide is in the case. There is no positive evidence in the record that the weapon was a deadly weapon, and it is to be deduced from the fact that whatever struck the deceased Mexican on the head made an indentation and fractured the skull about the size of a silver quarter of a dollar, which was, it is claimed, the ultimate cause of death. It seems the only evidence indicating the instrument used which inflicted the wound was a piece of brick bat, the size of which is not given, nor is its weight mentioned. This is not necessarily a deadly weapon, and the fact that the Mexican died from the wound thus inflicted would not of itself prove it was necessarily a deadly weapon. It also seems from the testimony three missiles were thrown, one of which missed, one struck him in the back, and the other on the head. This served to emphasize the proposition that negligent homicide should have been given in charge to the jury. We are further of opinion that these facts also called for a charge under Article 1147 of the Revised Penal Code of 1911. For authorities sustaining this proposition see Mr. Branch's Criminal Law, section 434, and the numerous cases there collated. If appellant was engaged in throwing rocks or pieces of brick bat at the Mexican with no purpose of killing, the jury should have been told that he might be, from that viewpoint of it, convicted of some degree of assault. Article 1147 and subsequent articles were not given in charge to the jury. The writer is of opinion that a charge on manslaughter should have been given under the facts, but my brethren do not so believe. In addition, this record discloses that Farris was permitted to turn State's evidence under a contract to plead guilty to manslaughter, which he did, and Gallagher, the other supposed or alleged conspirator, entered into contract with the State by which he was to plead guilty to manslaughter and obtain a suspended sentence, thus avoiding punishment. Had the killing not occurred, there could not have been a higher case than aggravated assault, and if there was no purpose to kill and no cruel circumstances attending the manner of killing, such as provided for in article 1149 of the Penal Code, the jury might have found appellant guilty of manslaughter, death having resulted.

There is another question presented. Shortly after and within a couple of days after the blow was inflicted and nearly three months

prior to the death of the Mexican, he made what is termed a dying declaration. The predicate for this was through the witness Mrs. Gonzales. She testified she was well acquainted with deceased, and that on the occasion in question he was sane, rational and conscious of what was transpiring. That he believed and so said that he was going to die from such injuries inflicted upon him, and that he had no hope of recovery therefrom. It may be questionable whether this predicate is sufficient. Mr. Branch, in section 486 of his valuable work on Criminal Law, states tersely this rule: "State must show declarant was under the immediate apprehension of death, and it is not sufficient that the declarant believed he was going to die and would never get well, when the wounds were not necessarily fatal," citing Edmondson v. State, 41 Texas, 496; Irby v. State, 25 Texas Crim. App., 203. Again he states, "A sufficient predicate is not shown where the only statement of the deceased indicating approaching death was a statement that he believed he was fatally shot," citing Craven v. State, 49 Texas Crim. Rep., 78. Again, he states the rule thus: "Predicate is insufficient if proof fails to establish the fact that declarant at the time of making the declaration was conscious of approaching death and believed there was no hope of recovery," citing Ledbetter v. State, 23 Texas Crim. App., 247; Phillips v. State, 50 Texas Crim. Rep., 127; Ex parte Meyers, 33 Texas Crim. Rep., 204; Craven v. State, 49 Texas Crim. Rep., 78. The predicate here referred to is found in two or three bills of exception, among others bill No. 5, in the qualification stated by the trial judge to said bill. If this is all the predicate, it may be seriously doubted whether or not the statement is sufficient, and the writer believes it was not. But the court overruled the objection, and permitted the testimony. Of course, Mrs. Gonzales could testify to the dying declaration if proper predicate had been laid. The deceased Mexican could not speak English. Mrs. Gonzales spoke the Mexican and English languages. She testified on the trial, and, of course, her testimony would be admissible provided the proper predicate should be laid. When the dying declaration was made several of the officers— the county attorney and justice of the peace and some of the constabulary—were present. Mrs. Gonzales interpreted from the Spanish into the English language to them what she said the Mexican said, which is used as a dying declaration. These officers did not understand what occurred between them, except as stated by Mrs. Gonzales. She was not even sworn as an interpreter on the occasion. These officers were permitted to testify and the State used their evidence as original testimony. Various objections were urged, which we think should have been sustained. Her interpretation of these statements of the deceased to the American officers was not admissible, nor was their testimony as to what she said admissible. It would be purely hearsay. They knew nothing that occurred except the conversation in the Spanish language, which Mrs. Gonzales interpreted to them. This was hearsay.

There are other interesting questions in the case, but for the reasons

indicated the judgment will be reversed and the cause remanded. The other questions may not arise upon another trial.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

### ON REHEARING.

December 1, 1915.

DAVIDSON, JUDGE.—At a former day of this term the judgment herein was reversed. It was said, in the opinion of the writer, that manslaughter was in the case and should have been given in charge to the jury. The majority of the court, however, did not agree to that. This is the principal basis of this motion for rehearing. In this respect the motion requests the majority of the court to agree with the writer and hold that manslaughter should be charged upon another trial.

Reviewing the record, the writer still adheres to his former belief that manslaughter was in the case and should have been given the jury, and upon another trial it should be so charged. I do not care to reiterate what I have said in the former opinion. The majority, however, adhere to their views. I cite in support of this Betts v. State, 65 Texas Crim. Rep., 358, 133 S. W. Rep., 251; art. 1148, Penal Code, 1911; Branch's Crim. Law, sec. 504; Johnson v. State, 42 Texas Crim. Rep., 377; Runnels v. State, 42 Texas Crim. Rep., 555; Taylor v. State, 41 Texas Crim. Rep., 148; Lee v. State, 44 Texas Crim. Rep., 460. Other cases might be cited, but these are sufficient.

Two other questions are suggested for decision, which were not passed upon in the former opinion. The writer thought he had sufficiently passed upon these questions, in a general way, without specifying, they being hearsay statements made out of the presence of the defendant. One presented the statements of officers of Oklahoma made to officers of Texas who had gone to that State in search of defendant, who, it is shown, had gone to Oklahoma after this tragedy. Those officers informed the Texas officers that defendant was going under a different name from his real name. Defendant was not present and knew nothing about it. We are of opinion this should not be introduced against the defendant. Also while Claud Gallagher was on the stand testifying for the State he was asked who it was Asa Farris told him, Gallagher, threw the rock and hit the Mexican, deceased, and wounded him in the forehead. Farris, Gallagher and the defendant are the supposed participants in the wounding of the Mexican, which resulted in his death. This statement that Farris made to Gallagher was out of the hearing of the defendant and after the offense is alleged to have been committed, and should not be used against appellant. The acts and conduct and words and statements of co-conspirators after the completion of the conspiracy can not be used against the other parties to the transaction when they were not present and did not hear it. This is a well

settled rule, and is discussed extensively in Cox v. State, 8 Texas Crim. App., 254.

The original opinion not having dealt specifically with the latter two questions, and appellant insisting upon their decision in order to avoid complications upon another trial, these matters are discussed. The trial court will understand that hearsay testimony is not admissible. We thought that the trial court would understand this from what was said in the original opinion about the hearsay testimony with reference to some of the other questions.

With these additions the opinion as heretofore delivered will stand.

*Overruled.*