### Walter Johnson v. The State.

No. 2302. Decided December 19, 1900.

**1. Witness—Impeachment—Supporting Testimony.**

Where a witness has been impeached by proof of his contradictory statements, it is competent to prove that he had formerly made a statement in regard to the matter similar to, and corroborative of, his statement on the trial shortly after the transaction occurred.

**2. Homicide—Weapon Used—Intent to Kill—Manslaughter—Aggravated Assault—Charge.**

Under our stautes, Penal Code, articles 717-720, in every case of homicide, where it becomes a question whether there was an intention to kill on the part

of the slayer suggested by the character of the weapon used, as where it is not per se a deadly one, it is the duty of the court, in its charge to the jury, to submit the issue of manslaughter; and, furthermore, if there was no intention to kill, he should submit the issue of aggravated assault.

APPEAL from the District Court of Harrison. Tried below before Hon. W. J. GRAHAM.

Appeal from a conviction for murder in the second degree; penalty, seven years imprisonment in the penitentiary.

Appellant was charged by the indictment with the murder of John Fletcher Williams, on the 10th day of March, 1899, by striking him with a stick.

The important facts of the killing are sufficiently stated in the opinion.

*W. C. Lane* and *W. H. Pope,* for appellant.

*Rob't A. John,* Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was convicted of murder in the second degree, and his punishment assessed at seven years confinement in the penitentiary, and he prosecutes this appeal.

Appellant excepted to the evidence of Post, on the ground that it was not competent for the State to show by said witness what the State's witness Warren and defendant's witness Fields had stated in his presence in regard to the difficulty. The testimony was clearly competent as to the witness Warren to corroborate and sustain him, inasmuch as the defendant introduced testimony to impeach him, tending to show that he had made statements contradictory to the testimony given by him on the trial. In such case, the State could show that he had made a statement in regard to the matter similar to, and corroborative of, his statement on the trial, shortly after the transaction occurred. As to the witness Fields, who was introduced by defendant, the testimony of Post was admissible to contradict and impeach him.

Appellant contends that the court erred in failing to give a charge on the law of manslaughter. Although we are not inclined to believe there was such provocation on the part of the deceased at the time of the homicide as would require a charge on manslaughter, yet an examination of the record suggests that a charge on this subject was demanded from one point of view. The homicide was committed by a single blow on the head of deceased with a stick in the hands of appellant, which is described as a white-oak stick about three feet long, with square edges, about one and one-half inches by two inches in thickness, and would weigh about four pounds. An eyewitness testified that appellant used both hands in striking deceased, and seemed to hit him very hard; that he struck him just above the left eye, and cut a place through the skin about an inch and a half long. The testimony further shows that deceased lived about two days after he was struck, and died

from the effects of the wound. With reference to the intent to kill, under the circumstances of the case, the court gave the following charge: "The instrument by which the homicide is committed is to be taken into consideration in judging of the intent of the party offending. If the instrument be one·not likely to produce death, it is not to be presumed that death was designed, unless, from the manner of its use, such intention evidently appears." The court made no effort to apply the provisions of the statute above quoted in the charge to the facts of the case, and it will be noted that he failed to charge on manslaughter or aggravated assault. Our statutes on this subject are found in the Penal Code, from article 717 to article 720; and besides the provisions of the Code quoted in the charge given, which is article 717, it is further provided that if the weapon is one not likely to produce death under ordinary circumstances, if the injury be inflicted in a cruel manner, the homicide may be manslaughter or murder, according to the facts of the case. And again, where the homicide occurs under the influence of sudden passion, but by means not in their nature calculated to produce death, the person killing is not deemed guilty of homicide, unless it appears there was an intention to kill, but in such case may be guilty of any grade of aggravated assault and battery. And again, where the circumstances attending the homicide show an evil or cruel disposition, or that it was the design of the person offending to kill, he is deemed guilty of murder or manslaughter, according to the other facts of the case, though the instrument or means used may not in its nature be such as to produce death ordinarily.

Now, the stick used in this instance was not a weapon ordinarily calculated to produce death. At least, this fact should have been presented to the jury so that they might pass upon it. If they found it was a weapon not ordinarily calculated to produce death, then, before they would be authorized to find defendant guilty, they were bound to find either that the injuries from which deceased died were inflicted in a cruel manner, or that from the manner in which the instrument was used appellant evidently intended to kill deceased. There were no peculiar circumstances of cruelty in this case, so that the issue left for the consideration of the jury was whether the circumstances showed that appellant evidently intended to take the life of deceased by the blow given. If he did, then he might be guilty of murder or manslaughter, according to the other facts of the case; and it was a pertinent inquiry in such contingency for the jury to inquire if appellant intended to kill deceased, whether such act intended was of his malice aforethought, or was an intent formed in the absence of this element of malice aforethought. But this phase of the case was not presented to the jury for their consideration. The court seems rather to have assumed as a fact either that the weapon was deadly, or that, although it was not deadly, appellant evidently had the intention to kill deceased. But both of these issues were matters of fact for the determination of the jury, and it was for them to decide whether appellant intended to

kill, and then to determine whether or not the intent to kill was formed under such circumstances as to make the homicide murder or manslaughter. We believe, under our stautes, in every case where it becomes a question whether or not there was an intention to kill on the part of the slayer suggested by the character of weapon used not being deadly, that it is the duty of the court to submit the issue of manslaughter; and, furthermore, if there was no intention to kill, he should submit the issue of aggravated assault. See Fitch v. State, 37 Texas Crim. Rep., 500; Taylor v. State (Texas Crim. App.), 51 S. W. Rep., 1106; Dones v. State, 8 Texas Crim. App., 112; Whitaker v. State, 12 Texas Crim. App., 436. The other questions discussed in appellant's brief will not be considered, as they are such as are not likely to arise upon another trial. But for the error of the court in failing to give a charge on manslaughter the judgment is reversed and the cause remanded.

*Reversed and remanded.*