## AL LUCAS v. THE STATE.

### No. 3350. Decided December 13, 1905.

**1.—Murder in Second Degree—Evidence—Bill of Exceptions.**

A bill of exceptions which does not state the ground of objection to the testimony with reference to remarks made by defendant about deceased, to the effect that if he went after a man he went to get him, can not be considered on an appeal from a conviction of murder.

**2.—Same—Credibility of Witness—Bill of Exceptions.**

Where on trial for murder, the State introduced testimony that defendant was under indictment for an assault to murder, for the purpose of discrediting his testimony, a general objection that such testimony had nothing to do with the case was correctly overruled.

**3.—Same—Requested Charge—Deadly Weapon.**

On a trial for murder, where the evidence tended very strongly to show that the knife used in the homicide was not in itself a deadly weapon, the court should have given the requested charge on this phase of the case.

**4.—Same—Aggravated Assault—Simple Assault.**

See opinion for facts necessitating a charge upon aggravated and simple assault under article 719, Code Criminal Procedure.

**5.—Same—Manslaughter—Charge of Court.**

On a trial for murder where the court's .charge on manslaughter was predicated specially on a serious personal conflict in which great injury was inflicted by the person killed, etc., and there was no evidence to justify such charge, but there was testimony to show that the deceased was the aggressor and struck defendant the first blow, evidently causing pain, the charge of the court should have given this as adequate cause.

**6.—Same—Provoking Difficulty—Charge of Court.**

Where on trial for murder, the evidence showed a casual difficulty between defendant and deceased, deceased becoming offended and committing an assault upon defendant, there was no evidence authorizing a charge on provoking a difficulty.

**7.—Same—Charges of the Court.**

See opinion for charges suggested on the different degrees of homicide, aggravated assault, and simple assault.

Appeal from the District Court of Dallam.    Tried below before Hon. Ira Webster.

Appeal from a conviction of murder in second degree; penalty, twenty years imprisonment in the penitentiary.

The opinion states the case.

*Tatum & Stepp,* and *Ed. C. Hyde,* for appellant.—To be guilty of any grade of murder, it must be shown that the act was not in self-defense, that he intended to kill deceased, that the instrument used was in its nature a deadly weapon calculated to produce ·death, or that the instrument was intentionally used in a manner calculated or likely to produce death, and that the act was not committed under the influence of sudden passion brought on by lawful provocation.    Shaw v. State, 34 Texas Crim. Rep., 435; Hatton v. State, 31 Texas Crim. Rep., 586; Thompson v. State, 24 Texas Crim. App., 380; Boyd v. State, 28 Texas Crim. App., 137; Bean v. State, 25 Texas Crim. App., 346; Fitch v. State, 36 S. W. Rep., 584; Craiger v. State, 13 Texas Ct. Rep., 736; White's Penal Code, articles 717 and 719.

*Howard Martin,* Assistant Attorney-General, for the State.

HENDERSON, Judge.—Appellant was convicted of murder in the second degree, and his punishment fixed at confinement in the penitentiary for a term of twenty years; hence this appeal.

Briefly stated the facts show: that appellant was the proprietor of a restaurant in Dalhart, and deceased, Lee Cannon was a partner in a saloon in the same town, and was running the .same.    They were on friendly terms previous to the homicide.    Somewhere between 12 and 1 o'clock, at night, appellant came to the saloon of deceased, walked to the back room, asked deceased if any one was in there, to which he replied "no."    Appelant continued going towards the back room, remarking, "Ain't there sure enough?"    Deceased replied, "No.    Do you think I would tell you a lie, or a damn lie about it."    Appellant said, "No, I thought maybe you was just joking with me."    Deceased at the time was standing near the bar, went over and sat down by the stove, where Harry Frederick was sitting—Frederick seemed to be asleep or intoxicated.    Appellant in the meantime came from towards the back of the room, and he and deceased appear to have had some talk.    The companion of Lucas, one Phipps, said, "Come, let's go."    Appellant said, "Let's take a drink."    Phipps said, "No, I don't want anything to drink."    About this time deceased said to appellant, "Did you come in here to start something?"    Lucas said, "No."    Directly deceased got up out of his chair, and went over to where Lucas was, and began fighting. The testimony is clear that deceased was the aggressor, and struck Lucas the first blow.    They fought some little time; and deceased (who was the larger of the two) seemed to get the best of it.    According to the defendant's testimony deceased choked him, and had his head bent back.

Directly deceased turned appellant loose and said, "You son of a bitch, you have got a knife," and started back behind the bar, when appellant and his companion Phipps, and Frederick ran out of the front door. After the difficulty appellant surrendered to the sheriff. Parties came in and found deceased to be cut in the groin and one cut in the hip, and another punctured wound a little above the hip, his coat collar was cut, and a slight scratch in the neck. There is no description as to the size of the knife or the length of the blades. It was a two-bladed knife, and the evidence showed that the wounds were inflicted with the smaller blade. The witnesses testify that the knife was not a deadly weapon, unless it struck some vital point. The wound in the groin severed or cut in two the femoral artery, and death ensued in fifteen or twenty minutes from hemorrhage. By the time the physicians reached there, life was nearly extinct. This is a sufficient statement of the case to discuss the issues presented.

During the trial, while the witness Jack Ellison was on the stand testifying in behalf of the State, the district attorney asked him to state if he heard appellant make any remark about fighting anybody before he left the saloon. Objection is made that the testimony had no reference to deceased, and unless it was shown to have allusion to or was connected with deceased that it was not admissible. This was overruled. Witness answered, "Yes, sir, he made the remark just before I taken him up there that 'when he went after a man he went to get him.'" The bill of exceptions merely states, as ground of objection that there was no reference to the deceased in the remark. The statement of facts as contained in the bill should have shown definitely that no allusion was made to deceased. Nor is it shown that said remark was made before or after the homicide. Of course, if we refer to the testimony (which we are not permitted to do) it shows that this remark was made before the difficulty which resulted in the death of deceased, and had no reference whatever to deceased. However, this should have been shown in the bill of exceptions. As presented in the bill we cannot say that the testimony is shown to be inadmissible.

There is also a bill of exceptions to the State proving that appellant was under indictment for an assault to murder one Williams. Objection was made to this on the ground that it had nothing to do with the case on trial. It does not appear to have been introduced on this ground, but merely as going to the credit of the appellant. It was admissible for this purpose.

Appellant's motion for new trial reserved a number of exceptions to the charge of the court, and to the failure of the court to give a special charge requested by him. We believe under the circumstances surrounding this case, appellant's requested charge should have been given. That is, the jury should have been instructed in some way that if they did not believe the instrument used was a deadly weapon; that is, one calculated to produce death or serious bodily injury, it is not to be presumed death was designed, unless from the manner in

which it was used such intention evidently appears. In this case the evidence tended very strongly to show that the knife was not in itself a deadly weapon, and appellant's rights should have been adequately guarded by a charge presenting this issue. Articles 717, 718, and 719, Code Crim. Proc.; Shaw v. State, 34 Texas Crim. Rep., 435; Newsome v. State, 75 S. W. Rep., 296; Griffin v. State, 53 S. W. Rep., 848.

In this connection appellant further insists that the court should have charged on aggravated and simple assault. We believe the court should have done this. Article 719 provides: "Where a homicide occurs under the influence of sudden passion, but by the use of means not in their nature calculated to produce death, the person killing is not deemed guilty of the homicide, unless it appear that there was an intention to kill; but the party from whose act the death resulted, may be prosecuted for and convicted of any grade of assault and battery."

There is also some criticism of the charge on manslaughter. The court's charge on this subject seems to be predicated specially on a serious personal conflict in which great injury is inflicted by the person killed, by means of weapons or other instruments of violence, or by means of great superiority of personal strength, although the person guilty of the homicide were the aggressor; provided such aggression was not made with intention to bring on a conflict, and for the purpose of killing. Now, as far as we can discover from the testimony, it was not shown that appellant was the aggressor nor that deceased committed serious personal injury on appellant. So, in our view, this proposition should not have been presented at all as adequate cause, as there was no testimony to justify it. However, the testimony does show that deceased was the aggressor, and struck appellant the first blow, which evidently caused pain. By our statute this is made adequate cause, and in our opinion should have been charged.

Appellant also complains of the court's charge on provoking the difficulty. The charge on this subject is not only radical error, but was not called for by any testimony disclosed in this record. So far as we are able to discern on the part of appellant, it was a casual difficulty. He walked into the saloon evidently looking for a party and believed he was in the back room. Deceased became offended, because he did not seem to take his word for it readily, and committed an assault on him. How this conduct on the part of appellant could be said to justify a charge on provoking the difficulty we are unable to determine. This question has been heretofore so thoroughly discussed that we do not deem it necessary to go into it here. McCandless v. State, 42 Texas Crim. Rep., 58, 57 S. W. Rep., 67½; Airhart v. State, 40 Texas Crim. Rep., 470; Wilson v. State, 10 Texas Ct. Rep., 709.

Appellant complains that the court gave a charge on murder in the first and second degree, contending that the evidence did not authorize a charge on these grades of felonious homicide. We are not prepared to say if the testimony shows an intentional killing, that it might not be murder in the second degree. On another trial the court should

carefully guard appellant's rights in a charge presenting this subject, and should give a full and adequate charge on manslaughter; and should also instruct the jury fully under article 717 et seq. as to the intentional killing, where the weapon used was not necessarily a deadly one; and should in this connection instruct the jury on aggravated assault and simple assault, should they not believe there was an intentional killing, and should refrain from instructing the jury with reference to provoking the difficulty on the part of appellant.

For the errors discussed, the judgment is reversed and the cause remanded.

*Reversed and remanded.*