## WILL GRANT v. THE STATE.

### No. 1330.   Decided February 7, 1912.

**1.—Murder—Manslaughter—Charge of Court—Statutes Construed.**

Under article 717, Code Criminal Procedure, if the instrument used be one not likely to produce death, it is not to be presumed that death was designed, unless the intention to kill appeared from the manner of its use; but under article 51, Penal Code, the intention is presumed whenever 'the means used are such as would ordinarily result in the commission of the forbidden act; and where no deadly weapon was used, and the court's charge burdened the statute with an instruction that the jury could not acquit of murder and convict of a lower offense, unless defendant's mind was influenced by sudden passion, the same was reversible error.

**2.—Same—Charge of Court—Statutes Construed—Intent.**

The presumption in favor of the accused under article 717, Code Criminal Procedure, is not made to depend upon the fact that his mind is or was under the influence of sudden passion, rendering the same incapable of cool reflection, but the intent to kill must be evident from the means used, or the manner of their use.

**3.—Same—Intent—Charge of Court.**

Where, upon trial of murder and a conviction of manslaughter, the evidence showed that defendant had no purpose to kill, but that deceased brought on the difficulty, the court should have charged on the specific intent to kill, independent of article 717, Criminal Procedure; especially where he was requested to do so.

Appeal from the District Court of Collin.   Tried below before the Hon. J. M. Pearson.

Appeal from a conviction of manslaughter; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*Smith & Wilcox* and *Abernathy & Abernathy*, for appellant.—On question of the court's charge on defendant's intent to kill: Grant v. State, 56 Texas Crim. Rep., 411; Betts v. State, 60 Texas Crim. Rep., 631, 133 S. W. Rep., 251.

On question of the court's charge on means used: Burnett v. State,

46 Texas Crim. Rep., 116; McLaughlin v. State, 10 Texas Crim. App., 340; Parker v. State, 22 id., 105; Cornelius v. State, 54 Texas Crim. Rep., 193.

C. E. Lane, Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—This conviction was for manslaughter, the minimum punishment of two years in the penitentiary being assessed by the verdict of the jury.

The former appeal of this case will be found reported in 56 Texas Crim. Rep., 411. The evidence, we think, is sufficiently set forth in the former appeal without restating it in this opinion.

The court gave the following instruction: "The instrument or means by which a homicide is committed are to be taken into consideration in judging the intent of the party offending. If the means be such as are not likely to produce death, it is not to be presumed that death was designed unless from the manner in which such means are used such intention evidently appears, and so if you find and believe from the evidence that the defendant killed R. F. Hamilton under the influence of sudden passion as hereinbefore explained, but by the use of means not in their nature calculated or likely to produce death, then you could not find the defendant guilty of manslaughter unless you also believed from the evidence that the State has shown beyond a reasonable doubt that 'it was the evident intention' of the defendant to kill the deceased at the time he kicked him and struck him, if you find from the evidence he did kick and strike him, and you further find from the evidence that such kicking or striking was likely to cause and was the cause of his death. In other words before you can find the defendant guilty of manslaughter you are required to find from the manner in the use of said means, it was the evident intention of the defendant to take the life of the said Hamilton, and you are instructed that in case you have a reasonable doubt as to that or as to any fact connected with the killing, you will give the defendant the benefit of such doubt."

Several grounds of objection were urged to this charge which appellant insists is so erroneous that it constitutes fatal error requiring a reversal of the judgment. The theory upon which this charge was given is that appellant, in order to have the benefit of article 717 of White's Code of Criminal Procedure, must have been actuated by sudden passion which rendered his mind incapable of cool reflection. That article reads as follows: "The instrument or means by which a homicide is committed are to be taken into consideration in judging of the intent of the party offending. If the instrument be one not likely to produce death it is not to be presumed that death was designed unless from the manner in which it was used such intention evidently appears." By the terms of article 51 of the Penal Code the intention is presumed whenever the means used are such as would ordinarily re-

sult in the commission of the forbidden act, but under the terms of article 717, supra, if the instrument be one not likely to produce death, then the presumption is reversed and no such presumption can be indulged that death was designed unless from the manner in which the instrument was used such intention is made evidently to appear. It follows, therefore, from these statutes that the weapon or means used must possess the character of a deadly weapon without regard to the manner in which it is used, and, second, though not deadly, the manner of its use must show an evident intention to kill. The character of the weapon, therefore, can not be fixed or determined by the manner of its use. It must ordinarily be a deadly weapon to warrant the presumption arising from its use, or if not such weapon, the intent must evidently appear from the manner of its use. Shaw v. State, 34 Texas Crim. Rep., 435. The means used by the accused must, therefore, be looked to for the purpose of determining his intent. If a deadly weapon is used in a deadly manner the inference is practically conclusive that he intended to kill, but if the weapon be not a dangerous one, or be not used in a deadly manner, then the intention must be established by the facts. It is fundamental that charges must be given upon every issue favorable to the defendant from which the jury might infer a want of guilt, or to give him the benefit of the doubt and all presumptions arising in his favor, and this would apply more fully with reference to cases where the intent forms a part or an element of the offense. It is equally fundamental that where circumstances which would tend to mitigate the offense or to extenuate are shown by the testimony, or arise from the facts, that the defendant is entitled to a charge clearly submitting these phases. Under the article quoted, 717, supra, as applied to the facts of this case, nothing will be indulged against the defendant in favor of the State as to the presumption with reference to the purpose of killing. The presumptions are all provided in favor of the defendant by the terms of this statute, and not only so but where this statute is invoked or is part of the law of the case, such intention must evidently appear, and this by the use of the means employed which are charged to have brought about the killing. Under the facts appellant used no weapon otherwise than his hands and fists and his feet in kicking. ·

The court, applying the law to the case, burdened the charge on this statute with an instruction to the jury that before they could acquit appellant of the homicide they must find that his mind was influenced by sudden passion "as hereinbefore explained." Referring to the prior sections of the charge, this allusion of the court was to the definition of manslaughter. Of course, it was necessary to inform the jury that in order to convict of manslaughter the mind must be influenced by sudden passion arising from adequate cause. In this connection the eighth section of the court's charge required the jury to find as a prerequisite to acquittal of the homicide that the mind of appellant was "under the influence of sudden passion" at the time of the difficulty,

and this section and the entire charge omits to instruct the jury in regard to appellant's intention independent of the means used by appellant if the homicide occurred from this viewpoint. Appellant contends that the court's charge is wrong in both particulars, that is, in burdening his intent under article 717, supra, with "sudden passion" arising from adequate cause, and, second, in failing to submit his intent independent of the adequate cause, and in violation of article 717, supra. Appellant's intent is not altogether measured, under the facts of this case, by the means used, because there was evidence before the jury to the effect that appellant did not intend to kill the deceased, and this independent of the means that the State relied upon to show intent. An inspection of article 717, supra, manifests that the court was in error in requiring the jury to find that appellant's mind must be agitated by sudden passion beyond cool reflection in order that he might be acquitted of an intentional homicide. Under that article in order to convict of a homicide it must evidently appear that the accused intended by the means employed to bring about death. The charge of the court that appellant's mind under such circumstances must be agitated by sudden passion such as to render it incapable of cool reflection, is a burden upon that statute not to be found in its language, and it is a burden upon the defendant under the terms of that statute which is excluded by its language. Suppose the cause was adequate and there was a sudden passion but no purpose to kill, and the means used did not show an evident intent to kill? Could it be possibly maintained that this would make it evident that the purpose was to slay by the means used? We would say clearly not. Again suppose there was no adequate cause but intense passion. Would this supply the evident intent required by the statute to make death an intentional homicide, unless the means used made it evident that such was the purpose? Should the statute be thus burdened in the absence, at least, of legislative action? We do not believe this proposition would be entertained as correct. Suppose again there was neither adequate cause nor sudden passion such as rendered the mind incapable of cool reflection. Would appellant thereby and therefrom be held responsible for the killing in the absence of such conditions constituting the killing evidently intentional? This we do not think is to be entertained as the law. From any standpoint the court's charge is fatally erroneous. The presumption in favor of the accused under article 717, supra, is not made to depend upon the fact that his mind is or was "under the influence" of "sudden passion." That question is not even suggested by the terms of that statute. The rule there prescribed is that the intent to kill must be evident from the means used and is not to be burdened by the fact that his mind was or was not agitated beyond cool reflection. The court's charge is clearly a limitation upon the statute against appellant and burdened him with a condition in derogation of the written law of the State, and one under which the jury could not acquit unless his mind was agitated by sudden passion as given by the court in his in-

structions on manslaughter. Under the facts of this case all avenue of escape was closed to appellant so far as the killing was concerned, and the jury was precluded from passing favorably upon the rights of the accused under a charge on aggravated assault. As the jury was charged, we find this condition, first, they should convict of manslaughter if they found appellant intended to kill by the means used, and this, of course, carried with it the adequate cause and sudden passion as defined by the court, and second, that he could not be acquitted of homicide under article 717, supra, unless his mind was under the influence of sudden passion produced by an adequate cause. It will, therefore, be readily seen that in no event could appellant be acquitted of homicide under article 717, supra, or in order to do so the jury must find that his mind was not moved by sudden passion and incapable of cool reflection. It will further be seen that sudden passion was made the controlling factor in judging the intent of appellant arising from the use of the means used. If sudden passion was absent under this charge, the intent of appellant to kill by the means used was made present in the mind of appellant by the court's charge. In other words, appellant could not be acquitted of homicide unless sudden passion was absent from his mind at the time of the difficulty. The other criticism, to wit: that the court failed to charge upon the want of intent independent of the charge already given, we think, is error. There was evidence before the jury to the effect that appellant had no purpose to kill. This was his evidence directly testified before the jury, and the facts of the case generally, to some extent, corroborated his statement under oath. It was a casual meeting. The difficulty was provoked and brought on by the deceased knocking appellant from his horse with a box of axle grease. The deceased got out his knife, and the fight begun. The testimony is further to the effect that appellant used no weapon, and the means employed by him were his hands or fists and his feet by kicking. Independent of article 717, appellant's purpose and intent in the difficulty, under the circumstances of this case, ought to have been charged as well as the provisions of said article.

To meet these objections to the charge appellant requested the court to give the following instructions: "If you should find and believe from the evidence that the deceased Hamilton brought on a difficulty with the defendant by hitting him with a box of axle grease and that during said difficulty the deceased received the injuries which resulted in his death, and if you should further find and believe from the evidence that the defendant did not intend at any time while so engaged in said difficulty with the deceased to kill the deceased then the jury are instructed that if they so find and believe the defendant would not be guilty of manslaughter as that term is defined in the main charge of the court, and the jury should acquit the defendant of the charge of manslaughter and should consider whether or not the defendant is guilty of an aggravated assault or was justifiable in his acts under the instructions contained in the main charge of the court."

These charges, in our judgment, should have been given. They were pertinent to the issues raised, and to some extent at least would have cured the errors criticised in the court's charge. In the former opinion the court, through Judge Ramsey, expressed serious doubt as to the sufficiency of the facts to authorize a conviction for homicide. The writer of this opinion is more impressed by this record with the correctness of Judge Ramsey's statement that 'the facts are not' sufficient to show an intention to kill. It is not the purpose here to go into a review of the facts.

For the reasons indicated the judgment is reversed and the cause is remanded.

*Reversed and remanded.*