## H. G. TWYMAN V. THE STATE.

### No. 7105. Decided January 30, 1924.

**1.—Murder—Manslaughter—Adequate Cause—Charge of Court.**

The contention of appellant that adequate cause is not an element of manslaughter where articles 1147 to 1150 inclusive of our Penal Code become applicable; in other words, that where a homicide occurs by the use of means not by their nature calculated to produce death, by reason of which the intention to kill becomes a matter of proof and does not rest upon presumption, that the issue of manslaughter arises regardless of the existence of adequate cause as defined in the general statute upon manslaughter, is untenable.

**2.—Same—Manslaughter—Rule Stated—Statutes Construed—Former Decisions.**

It is the opinion of this court that in so far as these decisions that lay down the proposition that the statutes quoted (article 1147 to 1150 inclusive, of our P. C.) above require the submission of manslaughter without proof of adequate cause where the instrument used is not per se a deadly weapon, misconceive the purpose and effect of the statute. Following Merka v. State, 82 Texas Crim. Rep., 550. Qualifying Johnson v. State, 42 Texas Crim. Rep., 377, and other cases.

**3.—Same—Jury and Jury Law—Practice in Trial Court.**

Where appellant made complaint at the action of the court in returning the jury for further deliberation after ascertaining that they had agreed upon the question of guilt but were divided seven to five upon the question of punishment; held that there was no reversible error. Distinguishing Hughes v. State, 81 Texas Crim. Rep., 526, and other cases.

**4.—Same—Charge of Court—Murder—Malice.**

Where, upon trial of murder, brought about by the use of the hands and deliberately choking deceased to death (as the State's theory of the case) the court's charge authorized a conviction for murder if the killing was actuated by malice, althought the hands were the only means used independent of the question of appellant's intention, and omitting an application of article 1147 P. C., that is where the killing occurs by the use of means not likely to produce death, the same is reversible error.

**5.—Same—Rule Stated—Charge of Court—Malice—Presumption—Burden of Proof.**

Where violence to one is prompted by malice, and the violence is executed with an instrument well calculated and likely to produce death, and death does result, the party exercising the violence is guilty of murder, but where violence to one is prompted by malice (cruelty aside) and death results, but the violence is executed by means not likely to produce death, the law does not aid the State by a presumption of intent to kill, but by article 1147 P. C. the presumption is all the other way and the parties committing the violence would not be guilty of murder unless from the manner in which the means are used the intent to kill evidently appears, and the burden is upon the State.

**6.—Same—Rule Stated—Manslaughter—Burden of Proof.**

If the killing occurs under the influence of sudden passion aroused by adequate cause by the use of means well calculated and likely to produce

death, the killing is manslaughter; but if the killing occur in sudden passion either with or without adequate cause (cruelty aside) and the means used is not likely to produce death, the party killing is not guilty of the homicide unless it appear that there was an intention to kill, and the burden of proof is upon the State.

#### 7.—Same—Charge of Court—Different Parts of Court's Charge.

This court is not unmindful of the rule that the charge of the court should be considered as a whole in determining an alleged error therein, but in the instant case this court has not been able to reach the conclusion that paragraph 18 is so worded as to supply the omission in the 15th paragraph of the court's charge which omits to submit article 1147 P. C. in this connection. Following Pinson v. State, 94 Texas Crim. Rep., 517.

#### 8.—Same—Charge of Court—Deadly Weapon.

In the absence of the question of the use of a deadly weapon no charge should be given upon this phase of the law. Following Shaw v. State, 34 Texas Crim. Rep., 435, and other cases.

#### 9.—Same—Charge of Court—Cruelty.

Where, upon trial of murder, the evidence raised the issue of cruelty there was no error in the court's charge in the submission of this issue to the jury.

Appeal from the District Court of Coryell. Tried below before the Honorable J. R. McClellan.

Appeal from a conviction of murder; penalty, ten years imprisonment in the penitentiary.

The opinion states the case.

*William McLean, W. H. Slay, Stinnett & Stinnett,* and *Clay McClellan,* for appellant.—On question of court's definition of deadly weapon: Grant v. State, 143 S. W. Rep., 929; Shaw v. State, 34 Texas Crim. Rep., 435.

On question of court's charge on manslaughter and adequate cause: Johnson v. State, 42 Texas Crim. Rep., 379, and cases cited in opinion.

On question of court's charge on cruelty: Whitaker v. State, 12 Texas Crim. App., 436; Johnson v. State, 60 S. W. Rep., 49.

On question that adequate cause is not an element of manslaughter under article 1147 to 1150 inclusive, P. C.: Taylor v. State, 41 Texas Crim. Rep., 148; Lee v. State, 44 id., 460; Betts v. State, 60 id., 635, and cases cited in opinion.

*R. G. Storey,* Assistant Attorney General, for the State.—Cited cases in opinion.

HAWKINS, JUDGE.—Conviction is for murder, punishment being assessed at ten years in the penitentiary.

On the 25th day of September 1921 appellant was employed as the

commandment or drill master at the State Juvenile Training School located at Gatesville in Coryell county. On that date and at that place Dell Thames met his death while an inmate of the institution. Appellant was indicted charged with murder alleged to have been committed by choking the said Thames with his (appellant's) hands. The State's case rests principally upon the testimony of Eddie Stokes and Joe Thomas who were also inmates of the training school and who had been selected from among the other boys as sub-officers for drill purposes. Their testimony in substance is that appellant had abused deceased on Friday and Saturday prior to his death on Sunday, and had given him a whipping earlier Sunday morning when they had reported that the boy would fall down and refuse to drill. According to their evidence, immediately preceding the homicide appellant was returning to the drill ground when they walked to meet him escorting deceased and reported that he had again refused to drill; that he motioned to them to take deceased behind the "picket", a small covered stand about eight by ten feet with open sides, used as a seat for guards, and which was the usual place for inflicting punishment; that appellant took deceased and deliberately choked him, using such expressions as, "Do you feel yourself slip- .ping?" "I liked to have got you that time", choking deceased down; that he then picked up his body and choked out of him any remaining spark of life. These two boys were supported in their testimony by two other boys, their testimony varying in some respects. Against this proof appellant offered the testimony of about eight of the inmates to the effect that Stokes and Thomas choked the deceased to death or killed him by other mistreatment and boasted of appellant's implication in the offense as one "they had put over on the Captain". It was also shown that two employes of the institution were standing on one side of the "picket" within eight or ten feet of appellant and deceased and that they heard none of the remarks attributed to appellant by Stokes and Thomas. On the other hand they testified that the first expression they heard appellant make was the inquiry asking deceased what was the matter; that appellant then called them to come around, and said something was wrong with the boy; that they both went around and found the boy dead. One of the employes, Johnson, testified that when he turned he saw appellant with his hand about the throat of deceased. Appellant explained this by stating that he was supporting the boy's head. The appearance of deceased after death was established by many witnesses. From his appearance two physicians testified that in their opinion he met his death by strangulation, while other physicians testified that he could not have died as the result of choking or strangulation. We think the foregoing a sufficient statement of the case.

Before discussion what we consider the main points upon which a decision of this case must rest, we will dispose of other questions presented. The court charged upon manslaughter, instructing the jury that "adequate cause" was one of the essential elements thereof. It is insisted that "adequate cause" is not an element of manslaughter where Articles 1147 to 1150 inclusive of our Penal Code become applicable; in other words, that where a homicide occurs by the use of means not in their nature calculated to produce death, by reason of which the intention to kill becomes a matter of proof and does not rest upon presumption, that the issue of manslaughter arises regardless of the existence of "adequate cause" as defined in the general statute upon manslaughter, being Arts. 1128 to 1137, Chapter 15, Penal Code. Our attention has been called to Johnson v. State, 42 Texas Crim. Rep., 377, 60 S. W. Rep., 48; Taylor v. State, 41 Texas Crim. Rep., 148, 51 S. W. Rep., 1106; Lee v. State, 44 Texas Crim. Rep., 460, 72 S. W. Rep., 125; Betts v. State, 60 Texas Crim. Rep., 631, 123 S. W. Rep., 751; Boyd v. State, (dissenting opinion) 78 Texas Crim. Rep., 28, 180 S. W. Rep., 230, as supporting the proposition contended for by appellant, and to Boyd v. State, supra, (majority opinion) and Merka v. State, 82 Texas Crim. Rep., 550, 199 S. W. Rep., 1123, as asserting the contrary rule. This court, speaking through Judge Morrow, in the opinion on rehearing in Merka v. State, (supra) reviewed or referred to the cases cited and said:

"We believe that in so far as these decisions that lay down the proposition that the statutes quoted above require the submission of manslaughter without proof of adequate cause where the instrument used is not per se a deadly weapon, that they misconceive the purpose and effect of the statute. This is the view of Mr. Branch as stated in his Annotated Penal Code, page 1183. This is in accord with the opinion of this court written by Judge Hurt in the Hill case, 11 Texas Crim. App., 470." The exact question was again before this court in Pinson v. State, 94 Texas Crim. Rep., 517, 251 S. W. Rep., 1092, and was discussed in the opinion on rehearing. The cases of Johnson (supra) and Taylor (supra) and Fitch v. State, 37 Texas Crim. Rep., 500, 36 S. W. Rep., 584, were there relied upon to support the same proposition now urged, but the rule announced in Merka v. State (supra) was followed. After referring to articles 1147 to 1150 of the Penal Code the conclusion of the court was announced by Judge Lattimore in the following language:

"It is not our understanding that by any of said articles it was intended to change the statutory definitions of manslaughter or to make any intentional killing manslaughter, in the absence of sudden passion based on an adequate cause." It is the opinion of the writer that the construction given the statute in Merka (supra) and Pinson (supra) is correct. The contention of appellant to the

contrary cannot be sustained under the view entertained by this court.

Appellant makes complaint at the action of the court in returning the jury for further deliberation after ascertaining that they had agreed upon the question of guilt but were divided seven to five upon the question of punishment. The jury were seeking to be discharged, asserting they could not reach an agreement. We do not think the bill relating what occurred brings the case within the principle announced in Hughes v. State, 81 Texas Crim. Rep., 526, 197 S. W. Rep., 215, and Golden v. State, 89 Texas Crim. Rep., 525, 232 S. W. Rep., 813, which are cited in support of the contention that error was committed.

The essential question on this appeal is the intent of appellant arising from the fact that the means used in killing deceased were the bare hands, and whether this matter of intent was properly presented in the court's instructions to the jury. To discuss this question intelligently it will be necessary to copy into this opinion certain paragraphs of the court's charge.

Paragraph 11 is a copy of Art. 1147 P. C. and reads:

"The instrument or means by which a homicide is committed are to be taken into consideration in judging of the intent of the party offending; if the instrument be one not likely to produce death, it is not to be presumed that death was designed unless, from the manner in which it was used, such intention evidently appears."

Paragraph 12 is a copy of Art. 1149 P. C. and reads:

"Where a homicide occurs under the influence of sudden passion, but by the use of means not in their nature calculated to produce death, the person killing is not deemed guilty of the homicide unless it appears that there was an intention to kill, but the party from whose act the death resulted may be prosecuted for and convicted of any grade of assault and battery."

Paragraph 13:

"A deadly weapon, within the meaning of the preceding paragraphs of this charge, is one which from the manner of its use is likely to produce death or serious bodily harm."

Paragraph 15:

"Now, bearing in mind the foregoing instructions, if you believe from the evidence in this case beyond a reasonable doubt that the defendant, H. G. Twyman, in the County of Coryell and State of Texas, and on or about the 25th day of September, 1921, did then and there unlawfully kill Dell Thames by then and there choking the said Dell Thames with his, the said H. G. Twyman's hands, as alleged in the indictment, and you further believe from the evidence beyond a reasonable doubt that in such killing, if any, the said defendant, H. G. Twyman, was actuated by, and acted upon his malice aforethought, as that term is defined to you in paragraph

four of this charge, you will find the defendant guilty of murder and assess his punishment at death, or by confinement in the penitentiary for any term of years, provided it be for not less than five years, as you may determine and state in your verdict.''

Paragraph 18:

''If in this case you believe from the evidence that the killing occurred under the influence of sudden passion, but you further believe that the same was done by the use of means not in their nature calculated to produce death, the defendant could not be convicted of any degree of culpable homicide unless you further believe from the evidence beyond a reasonable doubt that such killing, if any, was done in a cruel manner, or unless it appears from the evidence, beyond a reasonable doubt that there was an intention on the part of the defendant to kill the deceased, and if you have a reasonable doubt as to whether such killing was done in a cruel manner, or as to whether there was an intention on the part of the defendant to kill the deceased, you will give the defendant the benefit of such doubt and acquit him of any degree of culpable homicide. But if you believe that the killing did not occur in a cruel manner, and that it does not appear that there was an intention on the part of the defendant to kill the deceased, and you further believe from the evidence beyond a reasonable doubt that the defendant, H. G. Twyman, did make assault upon the said Dell Thames, as that term has hereinbefore been defined to you, by then and there choking the said Dell Thames with his, the said H. G. Twyman's hands, as alleged in the indictment, then you would be authorized to find the defendant guilty of a simple assault and assess his punishment at a fine of not less than five nor more than twenty-five dollars.''

One of the specific exceptions to paragraph 15 of the charge was that it authorized a conviction for murder if the killing was actuated by malice, although the hands were the only means used, independent of the question of appellant's intention; in other words, the complaint is that paragraph 15 is affirmatively erroneous in omitting an application of Article 1147 of the Penal Code.

Our statute defines murder (Art. 1140 P. C.) as follows:-

''Every person with sound memory and discretion, who, with malice aforethought shall unlawfully kill any person within this State shall be guilty of murder. Murder is distinguishable from every other species of homicide by the absence of circumstances which reduce the offense to negligent homicide, or manslaughter, or which excuse or justify the homicide.''

Where the killing occurs by the use of means not likely to produce death, then Article 1147 becomes as essential a part of the law of murder as though it were incorporated as a part of Art. 1140 itself. Articles 1147 to 1150 of our Penal Code have been a matter of fre-

quent discussion by this court, notably in Grant v. State, 65 Texas Crim. Rep., 266, 143 S. W. Rep., 929; Shaw v. State, 34 Texas Crim. Rep., 435; Merka v. State, 82 Texas Crim. Rep., 550, 199 S. W. Rep., 1123; Pinson v. State, 94 Texas Crim. Rep., 517, 251 S. W. Rep., 1092. See also Johnson v. State, 42 Texas Crim. Rep., 379, 60 S. W. Rep., 48; Danforth v. State, 44 Texas Crim. Rep., 105, 69 S. W. Rep., 159;. Posey v. State, 46 Texas Crim. Rep., 190, 78 S. W. Rep., 689; Lucas v. State, 49 Texas Crim. Rep., 137, 90 S. W. Rep., 880; Washington v. State, 53 Texas Crim. Rep., 481, 110 S. W. Rep., 751; Crow v. State, 55 Texas Crim. Rep., 202, 116 S. W. Rep., 52; Betts v. State, 60 Texas Crim. Rep., 631, 133 S. W. Rep., 252; Poole v. State, 62 Texas Crim. Rep., 360, 137 S. W. Rep., 666. From the language of said articles themselves, and the construction heretofore given them, we think the law may be stated concisely as follows: (a) Where violence to one is prompted by malice, and the violence is executed with an instrument well calculated and likely to produce death, and death does result, the party exercising the violence is guilty of murder. Why? Because malice being present, the law steps in with the presumption that death was designed, the means used being such as would ordinarily result in death, (Art. 51 P. C. ); (b) Where violence to one is prompted by malice (cruelty aside) and death results, but the violence is executed by means not likely to produce death, the law does not aid the State by a presumption of intent to kill but by article 1147 the presumption is all the other way, and the party committing the violence would not be deemed guilty of murder unless from the manner in which the means are used the intent to kill evidently appears; the intent to kill becomes a matter of proof and its presence must be shown before the State can convict for murder. (c) If the killing occurs under the influence of sudden passion aroused by adequate cause by the use of means well calculated and likely to produce death, the killing is manslaughter, (d) but if the killing occur in. sudden passion, either with or without adequate cause (cruelty aside) and the means used is not likely to produce death, the party killing is not deemed guilty of the homicide unless it appear that there was an intention to kill; here also the intent is not presumed but is a matter of proof.

Paragraph 15 of the charge directed the jury to find appellant guilty of murder if he killed deceased by choking him with his hands, and was actuated by malice, regardless of his intent, although the bare hands only were used, a means not likely to produce death. We think this charge affirmatively erroneous. It is urged by the State that the latter part of paragraph 18 of the charge should be considered in connection with the 15th paragraph. We are not unmindful of the rule that the charge should be considered as a whole in determining an alleged error therein and we have tried to do this in the present instance. We have not been able to reach

the conclusion that paragraph 18 is so worded as to supply the omission: in the 15th paragraph. The eighteenth paragraph is dealing with a killing occurring under sudden passion, and while it tells the jury if they have a reasonable doubt as to whether the killing was done in a cruel manner, or as to whether there was an intent on the part of appellant to kill deceased, they should acquit of any degree of homicide, it is not so connected with paragraph fifteen as that its application thereto may not have been misunderstood. The jury had been pointedly told if appellant killed deceased by choking him, and was moved to do so by malice, to find him guilty of murder. If they found under the evidence that appellant was acting, not under sudden passion, but with malice, they very logically could have concluded that paragraph fifteen directed them as to the proper verdict to render. If they had been told in connection with that paragraph that if the killing resulted from the use of means not likely to produce death, although the violence may have been prompted by malice, yet appellant would not be guilty of murder unless they believed from the evidence beyond a reasonable doubt that it was the intention of appellant to kill deceased, there could have been no way for them to misapprehend the law which in that respect was in appellant's favor.

Complaint is made at the definition of a "deadly weapon" as contained in paragraph thirteen of the charge, as not being applicable under the facts of this case. (See Shaw v. State, 34 Texas Crim. Rep., 435, 31 S. W. Rep., 361; Grant v. State, 65 Texas Crim. Rep., 266, 143 S. W. Rep., 929). While the charge defines a deadly weapon "within the meaning of the preceding paragraphs of the charge," etc. we fail to find any reference to a "deadly weapon" in any portion of the charge either preceding or following the one containing the definitions. There is no question in this case as to the use of an instrument ordinarily known as a "deadly weapon," and we doubt the propriety of the charge. The sole question as it related to the means used in the killing was not as to a deadly weapon, but was as to the intention of appellant who used means not ordinarily of a deadly character.

Exception was reserved to the submission of the issue of a killing occurring in a "cruel" manner on the ground that the evidence failed to raise any issue of cruelty. We are not in accord with this contention. The State's evidence, we think, raised the issue.

For the reason heretofore discussed, the judgment is reversed and the cause remanded.

*Reversed and remanded.*