CLAUD BRAZZELL v. THE STATE.

No. 8198. Delivered Oct. 29, 1924.

Rehearing denied Dec. 17, 1924.

Leave to file second motion for rehearing denied Jan. 28, 1925.

1.—Manslaughter—Special Charges—Covered in Main Charge—Properly Refused.

Special charges which do not accurately present issues raised by the facts, or which are fully and correctly covered in the main charge of the court, are properly refused. The court properly submitted to the jury, under the facts, the issue of aggravated assault, and appellant's special charges asked on that issue were properly refused.

2.—Same—Special Charge—Weapon Used—Character of Weapon—Manner of Its Use.

Appellant complains of the refusal of a special charge on the issue of the intent of the appellant to kill deceased when the blow was struck. The requested charge takes no note of the character of the weapon used, or the manner of its use. His declaration that he did not intend to kill the deceased would not be conclusive against the State. The court fully and correctly presented this issue in paragraph 5 of the charge. Under the evidence presented in this case, the court was not warranted in giving an instruction which assumed that the weapon was not of a nature reasonably calculated to kill. The special charge was properly refused. See rule in Twyman v. State, 96 Tex. Crim. Rep. 441.

3.—Same—Evidence—Statements of Deceased—Immaterial.

Appellant offered to prove by the witness Cook, a deputy sheriff, and by the witness Simmons, statements made to them by the deceased with reference to his keeping some women and whisky, in his place of business prior

99 Tex. Crim.—3.

to the homicide. This testimony did not even remotely have any bearing on the difficulty of deceased and appellant, which resulted in the killing, nor could it have possibly been construed as a threat against the appellant. It was properly excluded.

**4.—Same—Argument of Counsel—Discussion of Facts—Proper.**

Appellant complains in several bills of the argument of the state's attorney to the jury. None of his remarks, as presented in the record were improper, and seem to have been legitimate and proper deductions drawn from the evidence and presenting the law in the case.

ON REQUEST FOR LEAVE TO FILE SECOND MOTION FOR REHEARING.

So many requests of this character were being presented to this court that it was found necessary to announce the principle and our attitude toward them in Hickman v. State, 93 Tex. Crim. Rep. 407, 247 S. W. 518. We have examined the present request in the light of the rule thus announced, and the request to file the second motion is denied.

Appeal from the District Court of Taylor County. Tried below before the Honorable W. R. Ely, Judge.

Appeal from a conviction of manslaughter, penalty, two years in the penitentiary.

*Phillips, Brown & Morris,* of Ft. Worth, for appellant.

*W. J. Cunningham, M. S. Long,* of Abilene, *Tom Garrard,* State's Attorney, and *Grover C. Morris,* Assistant State's Attorney, for the State.

MORROW, Presiding Judge.—The offense is manslaughter; punishment fixed at confinement in the penitentiary for a period of two years.

On a previous trial the appellant had been acquitted of murder.

Appellant was a young man about nineteen years of age. The deceased Caton was about twenty-five years old. The deceased was a much larger and heavier person than the appellant. The deceased was conducting a cafe in the town of Moran, an oil district in Shackleford County. Some of the employees of the deceased were women. The appellant walked from the front to the rear part of the building and was engaged in conversation with one or more of these women when the deceased ordered him to leave the premises. Both appellant and deceased went outside and engaged in an altercation which culminated in the stabbing of the deceased several times by the appellant, two of the wounds being serious. After the deceased was wounded, he was removed by automobile to Cisco, some twenty miles distant, and taken to a hospital where he received medical treatment. His death ensued about ten or twelve hours later. One of the wounds entered the bowels cavity and the intestines protruded; another entered the lung cavity and a hemorrhage resulted.

There was an issue of fact concerning the nature of the wounds; that is, whether they were mortal wounds or whether death would

have ensued had there been more prompt and more scientific attention given to the deceased.

Appellant admitted that he cut and stabbed the deceased with a knife and that after using it he cast the knife aside. The knife was not produced upon the trial, nor was there any testimony showing its size, character or measurement further than what might be inferred from the nature and result of the wounds inflicted upon the deceased.

In instructing upon the law of the case, the court seems to have proceeded upon the theory that the only phase of the evidence calling for a specific application of the law to the issue of aggravated assault was that arising from the evidence tending to show that the wounds were not mortal; that death resulted from an intervening cause, namely, the removal of the deceased from the place of the homicide and the failure of the attending physicians to select the most scientific means in treating him after he reached the sanitarium.

In his brief the appellant insists that there was an issue of want of intent to kill the deceased upon the legal effect of which the jury was not properly informed. We have perceived no exception to the charge which presents this alleged fault for review, but appellant contends that it was brought to the attention of the court in a special charge which was refused, said special charge being in these words:

"Gentlemen of the Jury: If you believe that the deceased struck the defendant and knocked him down and the defendant was in the act of retreating and asked the deceased to stop, and that the deceased having failed to stop, defendant inflicted injury upon him with a knife, and that the defendant at such time and place did not intend to kill deceased, then and in that event, the defendant would not be guilty of manslaughter."

In Paragraph 11 of the charge the court instructed the jury that if while the appellant and deceased were standing near each other the deceased knocked him down or advanced on the appellant and that the conduct of the deceased, either alone or in connection with the comparative size and strength of the parties, or taken in connection with all the facts in evidence, there was created in the mind of the appellant, viewed alone from his standpoint at the time, a reasonable expectation of fear of death or serious bodily injury, that the appellant was privileged to use sufficient force to repel the assault, as viewed from his standpoint, and that if in doing so he stabbed and cut the deceased, he was not guilty. This paragraph of the charge seems to have instructed the jury upon that part of the special charge relating to the assault by the deceased and the movements of the appellant.

The court, in Paragraph 5, also gave this instruction to the jury:

"The instrument or means by which an homicide is committed may be taken into consideration in judging the intent of the party offending. If the instrument be one not likely to produce death, it is not presumed that death was the design unless, from the manner in which it was used,

such intention evidently appears. Where the homicide occurs under the influence of sudden passion, by the use of means not in their nature calculated to produce death the person is not deemed guilty of the homicide unless it appear that there was an intention to kill, and the party from whose act the death resulted may be prosecuted and convicted of any grade of assault and battery, unless the party inflicting the injury or injuries was acting in his necessary self-defense."

Appellant testified that in striking the blows, he did not intend to kill the deceased. The special charge requested takes no note of the character of the weapon used. If the appellant used, in the manner in which it was intended, a knife which was a deadly weapon, and inflicted mortal wounds upon the deceased, his declaration or testimony that he did not intend to kill him would not be conclusive against the State. The evidence in the case was such as to justify the jury in concluding that the knife used was a deadly weapon. The knife itself was not described. So far as shown by the record, appellant alone knew its description. He cast it aside, and according to some of the circumstances introduced in behalf of the State, he threw it into the creek. At all events, it was not produced; nor was there testimony describing it. The nature of the wounds which the appellant inflicted upon the deceased by using the knife were described by the attending physicians who examined the deceased. According to the State's testimony, the wounds resulted in the death of the deceased. With this evidence before the jury, the court was not warranted in giving an instruction which assumed that the weapon used was not of a nature reasonably calculated to kill. See Goodman v. State, 49 Texas Crim. Rep., 189; Thomas v. State, 44 Texas Crim. Rep., 344; Walters v. State, 37 Texas Crim. Rep., 388; Scott v. State, 42 Texas Crim. Rep., 607; Ashton v. State, 31 Texas Crim. Rep., 479; Crow v. State, 21 L. R. A., (N. S.) 502, note; Branch's Ann. Tex. P. C., Sec. 1587, subdivisions 4 and 5.

We take from the opinion of this court, written by Judge Hawkins, in Twyman v. State, 96 Texas Crim. Rep., 441, a statement of the law which is deemed pertinent in the present case, which we quote as follows:

"* * * (b) Where violence to one is prompted by malice (cruelty aside) and death results, but the violence is executed by means not likely to produce death, the law does not aid the State by a presumption of intent to kill but by article 1147 the presumption is all the other way, and the party committing the violence would not be deemed guilty of murder unless from the manner in which the means are used the intent to kill evidently appears; the intent to kill becomes a matter of proof and its presence must be shown before the State can convict for murder. (c) If the killing occurs under the influence of sudden passion aroused by adequate cause by the use of means well calculated and likely to produce death, the killing is manslaughter, (d) but if the kill-

ing occur in sudden passion, either with or without adequate cause (cruelty aside) and the means used is not likely to produce death, the party killing is not deemed guilty of the homicide unless it appear that there was an intention to kill; here also the intent is not presumed but is a matter of proof."

Many of the decisions of this court are collated in the opinion in the Twyman case, supra.

In the instant case, subdivision five of the court's charge stated the law more accurately than did the special charge requested. It covered the same subject, and no pertinent exception was addressed to it. The court could not, without doing violence to the State's case, have given the special charge.

Appellant offered to prove by the witness Cook, a deputy sheriff that some time before the homicide, the witness had told the deceased that it has been reported that he had stated that he intended to keep those women if he had to buckle on a "forty-five in order to do so, and that deceased made no response; that the witness was told by the deceased that he was running his own business and wanted the deputy sheriff to keep his nose out of it and stay away from his business. The relevancy of this testimony is not made apparent by the bill; nor do we perceive from the record in what particular it was pertinent to any issue in the case.

There are many criticisms to the argument reflected by bills of exception but a reproduction of the language used in many of them is deemed unnecessary. It is sufficient to say that, in the judgment of this court, the bills, as qualified, fail to show abuse of the privilege of argument. In two of the bills complaint is made of the remarks of State's counsel in these words:

"When the court tells you that you must view if from the defendant's standpoint, he means that the defendant claims he has a standpoint, but you cannot believe his standpoint to be true."

Appellant had testified that from his standpoint he was acting in his necessary self-defense. The verity of his testimony was manifestly a proper subject of inquiry by the jury, and the comment by counsel for the State by the remark mentioned appears to be within the scope of legitimate argument. Nor is the argument of the State's counsel criticised in Bill No. 6 such as would, in our judgment, warrant a reversal. Therein he said:

"You can back me across this room if I am coward enough to back off, and I have no right under the law to use anything but my fists on you to repel your attack just because you are advancing upon me. This is not the law and they know it."

State's counsel took the position before the jury that the evidence on the present trial was sufficient to show that the appellant was guilty of murder. It appears in the court's charge that the appellant had been acquitted of murder upon the evidence on the former trial. It was not

. contended by counsel for the State that in the present trial the jury should convict the appellant of more than manslaughter. On a trial for manslaughter the State has the right to prove and make use of in argument, such facts as bore upon the homicide, including malice and motive, not for the purpose of convicting the accused of murder, but for the purpose of enabling the jury to determine whether he was guilty of manslaughter and to aid them in fixing the penalty if they found him guilty.

There is evidence from which the jury might have concluded that the deceased accompanied the appellant to the outside of the building upon the invitation of the appellant; that the appellant struck the first blow, hitting the deceased in the stomach. It was the theory of the State that at the time this blow was struck, a knife was used which inflicted a wound through which the bowels of the deceased protruded.

The appellant, on the same night after the difficulty, denied to a bystander that he had cut the deceased at all. Commenting upon this, counsel for the State used this language:

. "Why, gentlemen, this man, when he was far removed from that difficulty and talking to a friend, why then was he denying it? because he knew he had assassinated that boy and took him unawares and it was his own conscience tearing at him that caused him to deny it."

By the witness Simmons, as shown by Bill of Exceptions No. 12, ap· pellant sought to show that some days before the homicide, deceased had stated in a barber-shop that he intended to keep women and whisky in his place of business if he had to do so at the point of a pistol. We have discerned nothing in the case which would render this testimony admissible. It was not the proper way to show that the deceased was a violent man.

The evidence is sufficient, and we have failed to find in the complaints of the manner of trial any error which warrants a reversal of the judgment. It is therefore affirmed.

### ON REHEARING.

LATTIMORE, Judge.—Appellant files an urgent motion for rehearing which has been carefully considered by us. This court did not say in its opinion that there was no exception to the charge of the court for any failure to apply the law of aggravated assault to the facts of the case. Appellant insists that there was a sufficient exception in that his exceptions contained the following: "The defendant excepts to said charge, because the court nowhere correctly applies the law on self-defense, or to the crime of aggravated assault, which should be done in an affirmative manner." Attention is called to the fact that an exception of this character is too indefinite. While this attempts to raise an error of omission and not apparently one of commission, it does not indicate any part of the charge which is defective, nor does it

suggest any specific correction which should have been made by the court below. We have again examined appellant's exception to paragraph 8 of the charge and are unable to bring ourselves to believe that same is on the weight of the evidence, or that it tells the jury in effect that if they do not find defendant guilty of manslaughter they should find him guilty of aggravated assault. However, if we found substance in this objection, it would not seem to be capable of harm because the jury did not find appellant guilty of aggravated assault but on the contrary did find him guilty of manslaughter. We have again reviewed the proposed testimony of Deputy Sheriff Cook and night Marshal Simmons which was rejected and the action complained of in bills of exception Nos. 11 and 12. We find nothing in the statements of deceased which would have been testified to by the two gentlemen named which could be construed even remotely as a threat against appellant. Nor do we find anything in the testimony surrounding the difficulty which resulted in the stabbing of deceased by appellant, which could in anywise make material the rejected testimony. The testimony of said witness merely reflected a statement of deceased that he purposed keeping certain women in his place regardless of the objection of the officers. It was not claimed that appellant was in anywise trying to prevent the keeping of said women in said restaurant or that any action of his in this regard brought about the fatal difficulty.

We did not say in our opinion that appellant had thrown his knife into the creek after the cutting but merely intimated there were some circumstances in evidence which might tend in that direction. As far as the record shows the knife used by appellant and which was thrown away by him after the difficulty, was never found or produced; and it was in testimony that after the cutting appellant went to his home along a way not very far distant from a creek. The matter is of no materiality and the proposition as to whether the knife was thrown into the creek or not would in nowise affect the question of appellant's guilt.

We think the matter of the objections to the argument made by the State, was properly disposed of in the original opinion.

Regretting our inability to agree with the contentions made in the motion for rehearing, same will be overruled.

*Overruled.*

### ON REQUEST FOR LEAVE TO FILE SECOND MOTION FOR REHEARING.

HAWKINS, Judge.—So many requests of this character were being presented this court found it necessary in Hickman v. State, 93 Texas Crim. Rep., 407, 247 S. W. 518 to make an announcement of the principle controlling our attitude towards them as follows:

"* * * Second motions for rehearing will not be considered by this court, nor leave granted to file same, unless there be a sufficient

·showing in such application of the fact that in its original opinion, or opinion upon the motion for rehearing the court has omitted to consider some matter, which, from the statement thereof in such application, is made to appear to this court so vital to the proper disposition of the case as to lead us to conclude that we erred in failing to consider same, or else such application must present such facts, arguments, or citations in reference to some matter decided in the original opinion or that upon rehearing, as will lead this court from an examination of the application to conclude that our decision in such regard was so far wrong as that its correction would entitle the appellant to a second rehearing."

We have examined the present request in the light of the rule thus announced. No matter was omitted from consideration in our former opinions. The arguments and citations upon the subjects which are thought by appellant to have been erroneously disposed of have been again examined, and our views have remained unchanged.

The request to file the second motion is denied.

· *Request denied.*